TJOFLAT, Circuit Judge,
specially concurring:
I concur in the court’s judgment because the result is dictated by Eleventh Circuit precedent. I write separately because that precedent, the doctrine of judicial es-toppel as laid out in Burnes v. Pemco Aeroplex, Inc.[1] and Barger v. City of Cartersville,[2] was wrongly decided. The consequences of today’s decision make the problem clear: U.S. Steel is granted a windfall, Slater’s creditors are deprived of an asset, and the Bankruptcy Court is stripped of its discretion.
Sandra Slater filed a Chapter 7 bankruptcy petition twenty-one months after bringing suit for employment discrimination against her former employer, U.S. Steel.[3] Under oath, she failed to list that suit as a contingent asset on her bankruptcy petition. Upon discovery, U.S. Steel moved the District Court to bar the suit on judicial-estoppel grounds. According to U.S. Steel, Slater’s inconsistent positions would “make a mockery of the judicial system.”[4]
While U.S. Steel’s motion was pending, the Bankruptcy Court first learned of Slater’s nondisclosed suit during a hearing on a related matter.[5] The bankruptcy judge *1211 noted that he “normally ... g[ot] [motions based on nondisclosed lawsuits] after they’ve settled them,”[6] The Bankruptcy Judge’s statement suggests that he hears about contingent assets, like lawsuits, somewhat regularly and usually only after their values become fixed. Having Slater’s employment-discrimination claims go undisclosed, then, did not appear particularly troubling from the judge’s perspective. He was willing to let Slater pursue her claims.
The District Court then granted summary judgment to U.S. Steel. The District Judge, concluding — correctly—that Bumes and Barger eliminated the Bankruptcy Judge’s reasoned discretion in such circumstances, found that judicial estoppel barred Slater’s claim. Judicial estoppel requires the court to consider two factors: “First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.”[7] That Slater took’ inconsistent positions was uncontested and the District Court inferred the requisite intent to “make a mockery of the judicial system” from Slater’s failure to list her claims on the bankruptcy petition. It granted summary judgment based on judicial estoppel in part to protect the integrity of the Bankruptcy Court. Today we affirm that decision.
The results of today’s decision speak for themselves. U.S. Steel no longer faces a set of potentially meritorious employment-discrimination claims. Judicial estoppel disposes of Slater’s claims, without examination on the merits; indeed, the doctrine blocks them altogether. U.S. Steel is free and clear from any liability it may have owed to Slater. Conversely, for Slater’s creditors, there will be no recovery on the claims, which belonged, by operation of law, to the bankruptcy estate the moment Slater filed her bankruptcy petition. And, the Bankruptcy Court, despite expressing no concern about the late-arriving claim,' receives no “protection” through the doctrine. Instead, its experience and discretion are disregarded in favor of the District Court’s judgment.
This special concurrence proceeds in three parts.[8] In Part I., I provide a brief overview of how the bankruptcy process is designed to work in the absence of judicial estoppel, with particular emphasis placed on the roles played by the trustee and the bankruptcy judge. In Part II., I trace the doctrine of judicial estoppel’s historical de *1212 velopment in the Eleventh Circuit. In Part III., I turn to the stark implications that stem from the continued application of judicial estoppel as required by Bumes and Barger. I conclude by calling for en banc review to set straight the doctrine of judicial estoppel.
I.
The Eleventh Circuit’s judicial-estoppel precedent to be applied by Article III courts in bankruptcy proceedings, which works instead against the structure and purpose of the bankruptcy system, fails to accord the broad deference to the bankruptcy courts that Congress intended. Before explaining why this is so, I begin with an overview of the relevant dynamics present in these proceedings for the those not already familiar.
The federal bankruptcy laws are designed to “give[ ] ... the honest but unfortunate debtor ... a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.”[9] In exchange for the discharge of his debts, the debtor is required, to the extent possible, to make his creditors whole with the property he owns at the time of bankruptcy.[10] Because the debtor’s property is self-reported, “the importance of full and honest disclosure [in a bankruptcy case] cannot be overstated.” [11] Candor is unquestionably “crucial to the effective functioning of the federal bankruptcy system.”[12]
The role of the bankruptcy judge is, of course, to resolve disputes that arise. But the bankruptcy judge’s time is also often occupied in a broad supervisory manner, generally ensuring that the case is administered in a “just, speedy, and inexpensive” manner.[13] “[T]he bankruptcy court is the ultimate custodian of the estate.”[14]
Filing a petition “creates an estate [that is] comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case,” regardless of where such property is located or *1213 who holds it.[15] Thus, as a matter of law, the estate — not the debtor — owns all assets the moment the debtor files his bankruptcy petition. Additionally, an automatic stay protects all assets of the estate, also as a matter of law, as soon as the petition is filed.[16] The stay protects against, as relevant here, “any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.”[17]
A bankruptcy trustee[18] is appointed to represent the estate and guide the bankruptcy case through the process to its conclusion.[19] The trustee is an indispensable party to the bankruptcy because the bankruptcy process is complex, is not self-executing, and requires the good faith of all involved. The trustee is a fiduciary to the estate.[20] The Bankruptcy Court and the trustee work together supervising the case, marshalling all of the debtor’s assets for distribution to the creditors.
The district courts have jurisdiction over bankruptcy cases,[21] though the district courts may provide in their local rules that bankruptcy cases be referred to the bankruptcy courts.[22] If an order of the Bankruptcy Court is appealed, the District Court sits as an appellate court in reviewing the Bankruptcy Court’s order.[23] The District Court is bound to a clear-error standard for the Bankruptcy Court’s factual findings and an abuse-of-discretion standard for the Bankruptcy Court’s discretionary . decisions, such as the decision whether to reopen a case.[24] Orders resulting from the District Court’s review may then move through the normal federal appellate process.[25]
I now turn to the evolution of judicial estoppel, a supposedly equitable doctrine overlaying this intricately designed bankruptcy system, which has managed to strip the Bankruptcy Court of its broad discretion as the “ultimate custodian of the estate.” [26]
II.
As Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4477 observes, “[T]he number of federal appellate decisions grappling with [the *1214 doctrine of judicial estoppel] has grown dramatically.”
The cases tend to cluster around a few salient points, leaving uncertainty in between. Some sense of order can be found by focusing on three major approaches. The narrowest approach precludes inconsistent positions only ón a theory akin to equitable estoppel, requiring reliance by a party who would be injured by permitting a change of position. A more open approach, which has become dominant in the federal courts, looks for reliance by an adjudicating tribunal. This approach in turn blends into a still more open-ended approach that, by seeking to prevent a party from “playing fast and loose” with the courts, implies distinctions between seemly and unseemly adversary behavior. All of these approaches must come to terms with the well-entrenched principle that modern procedure welcomes inconsistent positions in the course of a single litigation.[27]
Each of these approaches is solicitous of one or more discrete interests. The “nar-rawest approach” protects a party who has relied on its adversary’s former position from the injury it would suffer if the court allowed the adversary to abandon its former position and pursue a contrary position. ' This approach also protects the court’s integrity, which may be called into question if it issues a decision that appears to be unjust. The “more open approach” protects the previous court’s appearance of competence by not issuing a ruling the previous court should have made but did not. The “still more open-ended approach” protects the court from inconsistent pleadings that are not barred by the doctrines of issue and claim preclusion but are disrespectful of the judicial process. This Circuit’s doctrine best resembles the “still more open-ended approach.”[28]
In the remainder of Part II., I trace the evolution of judicial estoppel in this circuit. In its first iteration, the doctrine required that the inconsistent positions at issue be taken under oath in separate judicial proceedings. To invoke the doctrine, a party had to show that its adversary was advancing a position in the District Court that *1215 was inconsistent with a position it took in an earlier judicial proceeding. The doctrine assumed that the adversary’s first position was true, and its second position false. The District Court invoked the doctrine and estopped the adversary from asserting the second position to protect the judicial system’s integrity. Allowing the adversary to go forward with a false claim would be to tolerate the perversion of the judicial process and that, obviously, would undermine the integrity of the judicial process.
Over time, this formulation of the doctrine changed. The requirement of an oath in both the prior proceeding and the District Court was modified to exclude the oath in the District Court.[29] Moreover, the “prior proceeding” requirement was also changed such that the “prior” pro-eeeding no longer needs to come first in time. If, for example, the adversary’s position under oath is that the claim 'he is litigating in the District Court does not exist, the District Court must dismiss the claim on the merits. That is, the doctrine assumes that the position stated under oath is true, and that the position in the District Court is therefore false. The District Court therefore invokes the doctrine and estops the adversary’s position to vindicate the integrity of the prior proceeding.
A.[30]
The doctrine of judicial estoppel first appeared in Eleventh Circuit precedent[31] in 1953, in Livesay Industries, Inc. v. Livesay Window, Co.[32] For our purposes, *1216 however, the doctrine expressed in Bumes and Barger sprouts from a 1973 decision, Johnson Service Co. v. Transamerica Insurance Co.[33] In Johnson Service, the party asserting the doctrine was not a party in the prior proceeding — the Burnes scenario.[34] Sitting in diversity and therefore bound to apply the relevant state law, the Johnson Service Court looked to the Supreme Court of Texas’s pronouncement in Long v. Knox,[35] which provided that
“[t]he doctrine of judicial estoppel is not strictly speaking estoppel at all but arises from positive rules of procedure based on justice and sound public policy. It is to be distinguished from equitable estoppel based on inconsistency in judicial proceedings because the elements of reliance and injury essential to equitable estoppel need not be present. Under the doctrine of judicial estoppel ... a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary to the assertion sought to be made. It ... is not necessary that the party invoking this doctrine have been a party to the former proceeding.” [36]
The Johnson Service Court then explained that,
Judicial estoppel is a technical rule designed to meet needs of broad public policy. It is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings. Because the rule looks toward cold manipulation and not an unthinking or confused blunder, it has never been applied where plaintiffs assertions were based 'on ... inadvertence[ ] or mistake.[37]
Thus, Wright, Miller & Cooper’s “still more open-ended approach” gained its first foothold.
Having already been applied when the party asserting judicial estoppel was not a party to the prior proceeding, the next appearance of the doctrine involved the New Hampshire scenario[38] in which the party asserting estoppel was a party to the prior proceeding. Like Johnson Service, American National Bank of Jacksonville v. Federal Deposit Insurance Corp.[39] was a diversity case in which the court was tasked with applying state law.[40] The American National Bank Court cited Johnson Service for the proposition that “□judicial estoppel is applied to the calculated assertion of divergent sworn positions.” [41] It also noted that “[t]he doctrine is designed to prevent parties from making *1217 a mockery of justice by inconsistent pleadings.” [42]
B.
In 1988, this court, in Chrysler Credit Corp. v. Rebhan,[43] considered for the first time whether to reeognize judicial estop-pel as a federal rule and thus part of the law of the Eleventh Circuit. Chrysler Credit presented the New Hampshire scenario and involved the application of the Bankruptcy Code.[44] The debtor,[45] Re-bhan, was attempting to maintain a factual position under oath in an adversary proceeding initiated by Chrysler Credit that was directly contrary to the factual position he had pursued under oath against Chrysler Credit in a state court.[46] Chrysler Credit objected, arguing that judicial estoppel barred Rebhan’s position. The Bankruptcy Court agreed, the District Court affirmed, and Rebhan appealed to this court. In that this court was “not bound ... to apply any rigid formulation of the doctrine,” having previously applied judicial estoppel only as state law, *1218 it looked to “common law or to the policies supporting the doctrine itself for guidance,” and specifically to the Texas law that had informed the Johnson Service Court’s decision.[47] Importantly, the court commented on the purpose of judicial estoppel. It found that the doctrine’s purpose was to prevent parties from “attempting] to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings,” [48] and affirmed the lower courts’ rejection of Rebhan’s position because he was attempting to manipulate the Bankruptcy Court’s decision.[49]
Three years later, this court once again applied the doctrine of judicial estoppel as federal law in a case presenting the New Hampshire scenario. In McKinnon v. Blue Cross & Blue Shield of Alabama,[50] we adopted the state-law formulation articulated in American National Bank: “Judicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings”[51] (collectively the “divergent-sworn-positions-and-mockery-of-justice rule”).[52] The divergent-sworn-positions requirement had previously been adopted into federal law through Chrysler Credit, and McKinnon added the “mockery of justice” language to federal law. This divergent-swom-positions-and-mock-ery-of-justice rule was then applied verbatim in Talavera v. School Board of Palm Beach County[53] and Taylor v. Food World, *1219 Inc.[54]
In Salomon Smith Barney, Inc. v. Harvey, [55] a diversity case, the court looked to federal law instead of state law for the elements of judicial estoppel.[56] After quoting the federal divergent-sworn-positions- and-mockery-of-justice rule the court explained what the party asserting judicial estoppel must establish in order to prevail. “This circuit’s approach contemplates two elements. First, it must be shown that the allegedly inconsistent positions were made *1220 under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system”[57] (collectively the “two-element statement”).[58]
Although the Salomon Court was applying a state-law formulation of judicial es-toppel, in referring to “[t]his circuit’s approach” the court created the impression that it was dealing with the doctrine as a federal, not a state, rule. This made the Court’s quotation of the divergent-sworn-positions-and-mockery-of-justice rule problematic. The question was whether the juxtaposition of the divergent-sworn-positions-and-mockery-of-justice rule’s description of “inconsistent pleadings” as “divergent sworn positions” with the two-element statement that the “inconsistent positions [must be] made under oath in a prior proceeding” merely reinforced the divergent-sworn-positions-and-mockery-of-justice rule’s requirement that the first, as well as the second, of the “divergent sworn positions” be under oath, or instead whether it meant that only the first of the divergent positions needed to be under oath.
Without elaboration, the Bumes and Barger Courts would subsequently conclude, by implication and in the context here, that the two-element statement amounted to a proper interpretation of the divergent-sworn-positions-and-mockery-of-justice rule that only the position taken in “a prior proceeding” needed to be under *1221 oath.[59] Moreover, the “prior” proceeding could actually be a subsequent proceeding.[60] In Bumes, the first proceeding was the lawsuit the debtor filed in the District *1222 Court; the second proceeding was the debtor’s Chapter 7 case. Similarly, in Barger, the first proceeding was the District Court action; the second proceeding was the Chapter 7 case. In both situations, the second proceeding became the “prior proceeding” because it was the only proceeding in which the debtor asserted the position under oath that triggered the application of judicial estoppel. The debt- or’s position in the District Court was not asserted under oath because verified pleadings are no longer required by the Federal Rules of Civil Procedure.[61] The divergent-sworn-positions-and-mockery-of-justice rule’s “divergent sworn positions” element thus fell by the wayside.[62]
C.
1.
Judicial estoppel’s next doctrinal development, in Bumes, occurred when this court changed its focus from protecting the integrity of the judicial system to punishing debtors who do not fully disclose their assets. Because Bumes followed directly on the heels of the Supreme Court’s decision in New Hampshire v. Maine,[63] the court first had to consider that case’s impact on the Circuit’s own precedent. In New Hampshire, the Supreme Court identified three factors that guided its judicial-estoppel analysis — the degree to which the two statements at issue were inconsistent; whether a judicial tribunal accepted the earlier position so that it would appear, if a later court adopts a contrary position, that either court had been misled; and whether the party advancing the inconsistent position would derive an “unfair advantage or impose an unfair detriment on the opposing party if not estopped”[64] — but went on to conclude that these factors were not “inflexible prerequisites or an exhaustive formula for determining the applicability *1223 of judicial estoppel.”[65] Against this uncertain backdrop, the Bumes Court recited verbatim the divergent-sworn-positions- and-mockery-of-justice rule[66] and followed it with the two-element statement:
In the Eleventh Circuit, courts consider two factors in the application of judicial estoppel to a particular case. “First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.”[67]
The court then considered whether basing the application of judicial estoppel on these two factors would comport with the Supreme Court’s “instructions” in New Hampshire, and concluded that the two factors “provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case.”[68]
Addressing the first factor, the Bumes Court focused solely on the debtor’s position before the Bankruptcy Court,[69] stating that there was “no debate that [the debt- or’s] financial disclosure forms were submitted under oath to the bankruptcy court; therefore, the issue bec[ame] one of intent.”[70] That is, were the inconsistent positions the debtor had taken “calculated to make a mockery of the judicial system”? Specifically, when he amended his bankruptcy schedules pursuant to the Bankruptcy Court’s order but failed to disclose his Title VII claim and the lawsuit against his employer, was the nondisclosure inadvertent or mistaken?
Appearing to equate the phrase “calculated to make a mockery of the judicial system” with the phrase “intentional manipulation” of the system, the court observed that “several circuits, in considering the particular issue of judicial estoppel and the omission of assets in a bankruptcy case, have concluded that deliberate or intentional manipulation can be inferred from the record.”[71] Then, citing decisions of other circuits; the court reasoned that whether an intent to manipulate' the system can be inferred turns on whether the debtor, at the time he breached the duty to disclose the claim, either lacked knowledge of the claim or had no motive for concealing it.[72] If the debtor knew of the claim or *1224 had a motive for concealing it, the failure to disclose the claim could not have been inadvertent or a mistake.[73]
The court concluded that the record before it contained “sufficient evidence from which to infer intentional manipulation by [the debtor]”[74] as a matter of law, and thus affirmed the District Court’s grant of summary-judgment to the defendant. The debtor obviously knew about the Title VII litigation pending against the defendant when he amended his schedule of assets but failed to disclose the litigation, and he had a motive for concealing it:
As to motive, it is undisputed that [the debtor] stood to gain an advantage by concealing, the claims from the bankruptcy court. It is unlikely he would have received the benefit of a conversion to Chapter 7 followed by a no asset, complete discharge had his creditors, the trustee, or the bankruptcy court known of a lawsuit claiming millions of dollars in damages.[75]
That the debtor’s failure to disclose the claim could be remedied if his Chapter 7 case were reopened was, in the court’s view, irrelevant because
[t]he success of our bankruptcy laws requires a debtor’s full and honest disclosure. Allowing [the debtor] to backup, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors’ assets.[76]
Shifting the focus of the judicial-estoppel inquiry from preserving the integrity of the judicial system to punishing the debtor for failing to fully disclose his assets, the Bumes Court set the stage for the doctrine’s final extension in Barger. ,
2.
a.
Barger v. City of Cartersville[77] further weakened the intent requirement by rein *1225 forcing Bumes’s conclusion that it would diminish debtors’ “necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors’ assets” if a noncompliant debtor were “allow[ed] to back up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary.”[78] In Barger, the debtor, Donna Barger, sued the City of Cartersville after a demotion, seeking reinstatement.[79] Shortly thereafter, she also sought Chapter 7 bankruptcy relief.[80] While her bankruptcy estate was being administered, she amended her complaint against the City to seek compensatory and punitive damages in addition to reinstatement.[81] Because she was now seeking damages, she was required to amend her bankruptcy filings but failed to do so.[82]
When the City discovered this it moved the District Court for summary judgment based on judicial estoppel, and the bankruptcy trustee intervened.[83] The debtor responded by moving the Bankruptcy Court to reopen her case[84] so she could disclose the litigation.[85] Although the City *1226 objected to reopening the case[86] the court exercised its discretion and granted Bar-ger’s motion.[87]
As indicated in the order, the court first decided that it had the authority to reopen the Chapter 7 case.[88] Under 11 U.S.C. § 350(b), the case could be “reopened ... to administer assets, to accord relief to the debtor, or for other cause.”[89] The claims against the City, which became assets of the debtor’s estate on the filing of the Chapter 7 petition but were not scheduled, remained assets of the estate after the case closed since the claims had not been abandoned by the trustee[90] or otherwise administered. “It would ordinarily follow,” the court concluded, “that the case should be reopened to administer the claim[s] for the benefit of creditors.”[91] *1227 The Bankruptcy Court did, however, address the question of whether the doctrine of judicial estoppel, as applied in Bumes, should foreclose Barger’s motion. In the court’s mind, the question turned on whether the debtor, in failing to amend her schedules, “operate[d] with an intentional or manipulative disregard of the legal system or the bankruptcy processes in this Court.”[92] The court found that she had not.
She truthfully and voluntarily disclosed the existence of the Litigation to the Trustee, the person responsible for pursuing it, whether or not it had been scheduled. Her counsel’s failure to amend her schedules could not, and did not, gain any advantage for her and, indeed, that failure was actually adverse to her interests. Her counsel has admitted that this failure was inadvertent oversight and there is nothing in the record or this Court’s experience, that would indicate otherwise.
The Federal Rules of Bankruptcy Procedure are to be construed “to secure the just, speedy, and inexpensive determination of every case and proceeding.” Fed. R. BankR.P. 1001. It would not serve the objectives of those Rules to hold that, in these circumstances, Debt- or’s failure to amend schedules to list a claim that had been voluntarily disclosed to the Chapter 7 Trustee at the § 341(a) meeting of creditors should preclude reopening of the case to correct that failure. To the contrary, because the voluntary disclosure to the trustee served the same substantive purpose as an amendment, because Debtor did not and could not benefit by the failure to amend, and because the failure is due to inadvertence, the just determination of this case requires reopening so that the claim can be administered.[93]
Assuming, however, that the debtor was at fault for failing to amend her schedules, the court noted that the bankruptcy law provided “punishments other than judicial estoppel that can be directed at a debtor, rather than the estate and creditors,” to deter debtors from concealing their assets, including sanctions under Rule 9011 of the Federal Rules of Bankruptcy Procedure,[94] revocation of the discharge,[95] or denial of *1228 any exemption in the claim and its proceeds.[96] Recognizing that judicial estoppel was a discretionary doctrine,[97] the court concluded that the “important interests of creditors, militate[d] against its application.” [98]
It [would be] incongruous to punish Debtor’s creditors and impair their prospects for a potential recovery in the bankruptcy case in order to improve the City’s judicial estoppel argument in District Court. In In re Daniel, 205 B.R. 346 (Bankr.N.D.Ga.1997) (Murphy, J.), the court observed that reopening a bankruptcy case in order for a debtor to disclose an asset is appropriate even if it deprives a defendant of a judicial estop-pel defense.[99]
Moreover, “[a]ny advantage which Debtor may have gained by omitting the asset from her schedules is eliminated by reopening, amending the schedules and allowing the Chapter 7 Trustee to administer the asset.”[100] The court concluded that “the interests of Debtor’s creditors override any detriment that the City may *1229 sustain as a result of reopening the case and that the Debtor’s conduct does not preclude such reopening.”[101]
The District Court then applied judicial estoppel and granted the City’s motion for summary judgment.[102] In doing so, the court effectively rejected the Bankruptcy Court’s findings and conclusions, and substituted its own, to-wit: the debtor, in failing to list the claims and her lawsuit against the City in her schedules, intended to manipulate the judicial system.[103]
b.
On appeal, this court applied the two-element statement in determining whether the City had established the defense of judicial estoppel.[104] This meant the City’s task was two-fold: “First, ... [Bargerj’s allegedly inconsistent positions must have been ‘made under oath in a prior proceeding.’ Second, the ‘inconsistencies must be shown to have been calculated to make a mockery of the judicial system.’ ”[105]
The City, of course, could show that the claims Barger was asserting in the District Court were inconsistent with the claims she had presented to the Bankruptcy Court and that her Statement of Financial Affairs to the Bankruptcy Court was, by its very nature, under oath.[106]
Having satisfied the first prong, the City still had to show that Barger filed the false statement with the intent to manipulate the judicial system:
[T]he issue here is intent. For purposes of judicial estoppel, intent is a purposeful contradiction — not simple error or inadvertence. “[Djeliberate or intentional manipulation can be inferred from the record,” where the debtor has knowledge of the undisclosed claims and has motive for concealment.[107]
*1230 Because the court accepted that Barger’s intent to manipulate the judicial system was inferable as a matter of law, the City was able to make this showing and thus satisfy both prongs of the test.[108] The court noted that Barger had knowledge of the claims she was pursuing against the City at the time she failed to disclose the claims, and found that she had a motive for concealing them.[109]
Barger appeared to gain an advantage when she failed to list her discrimination claims on her schedule of assets. Omitting the discrimination claims from the schedule of assets appeared to benefit her because, by omitting the claims; she could keep any proceeds for herself and not have them become part of the bankruptcy estate. Thus, Barger’s knowledge of her discrimination claims and motive to conceal them are sufficient evidence from which to infer her intentional manipulation.[110]
The court affirmed the District Court’s application of judicial estoppel because the City had satisfied the two-element statement’s requirements.
3.
Though the doctrine of judicial estoppel as expressed by Bumes and Barger continues to be binding precedent in this circuit,[111] a subsequent panel reached a directly contrary decision in Parker v. Wendy’s International, Inc.,[112] a case presenting a set of facts materially indistinguishable from those in Barger.[113] The Parker Court concluded that “[t]he correct analysis here compels the conclusion that judicial estoppel should not be applied at all” to bar the trustee of the bankruptcy estate from pursuing an undeclared lawsuit.[114] Because the trustee had not been “tainted or burdened by the debtor’s misconduct” — the post-petition inconsistent statements in the Bankruptcy Court and in the District Court — it would be inappropriate to punish the trustee in the debtor’s stead, and by extension deprive the debtor’s creditors of property *1231 that belonged, by operation of-law, to the estate.[115]
Notably, though the Parker panel cited each New Hampshire, Bwmes, and Barger multiple times, it never explained why Barger did not dictate the result.[116] Many courts and commentators have cited Parker favorably, often mistakenly referring to Parker as the Eleventh Circuit’s controlling statement of judicial estoppel.[117] Indeed, the Fifth Circuit, sitting en banc, relied extensively on Parker’s logic to overturn a panel decision applying judicial estoppel to bar an innocent trustee from pursuing an undisclosed claim.[118] As the decision in Parker demonstrates, the current state of our judicial-estoppel jurisprudence is both confused and confusing, calling to mind the old saw that justice ought not be dispensed under a rule that varies by the length of the presiding judge’s foot.[119]
D.
In sum then, trying to reconcile this court’s decisions applying judicial estoppel as a uniform doctrine proves problematic, to say the least. The vast.majority of the decisions discussed above fall in the category Wright, Miller & Cooper labels the “still more open-ended approach,”[120] And with minimal exception, all focus on.and penalize the same “unseemly adversarial behavior” — taking false positions under oath.[121].
Judicial estoppel first became this court’s law in Chrysler Credit, which involved statements under oath in two forums, a North Carolina court and the Bankruptcy Court, and held that the doctrine’s purpose was tú prevent, parties from “attempting] to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings.” [122] In so many words, we said *1232 that permitting a party to assert under oath a position directly contrary to a position he had taken under oath in a former judicial proceeding would pervert the judicial process.[123] Judicial estoppel, in barring the asserted position, protects that process.
In McKinnon, the court adhered to the Chrysler Credit formulation of the doctrine and said, in effect, that in attempting to manipulate the court system through the assertion of divergent sworn positions, a party was “making a mockery of justice by inconsistent pleadings.”[124] In Salomon, a diversity case,[125] after reiterating verbatim the divergent-sworn-positions-and-mockery-of-justice rule, the court stated that: “[t]his circuit’s approach contemplates two elements. First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system,”[126] the two-element statement. Because the court was applying a state-law version of judicial estoppel, the added sentence had no effect on the federal version of the doctrine this court had adopted in Chrysler Credit and applied foursquare in McKinnon,
Nine months later, in Bumes, a federal-question case, the court treated Salomon as if it were a federal-question case rather than a diversity case and adopted the two-element statement as expressing the burden of proof a party must satisfy to invoke judicial estoppel before the District Court.[127] A party need only show that the debtor is prosecuting a claim that he had not disclosed to the Bankruptcy Court as required by 11 U.S.C. § 521(a).
The Bumes Court would have realized, of course, that there is a difference between the requirements of the divergent-swórn-positions-and-mockery-of-justice rule and the two-element statement in terms of what a party must prove to establish the judicial-estoppel defense and that it was bound to apply the divergent-sworn-positions-and-mockery-of-justice rule, if applicable. I assume that the court considered the divergent-sworn-positions-and-mockery-of-justice rule inapplicable in the sense that Chrysler Credit (which McKinnon followed) set an example by formulating a version of judicial estoppel appropriate for the specific factual situation presented in that case.[128] Chrysler Credit gave the court leeway'to do the same thing, to fashion a rule for the specific situation at hand.[129] Moreover, as *1233 the court noted, the Supreme Court in New Hampshire acknowledged that “the circumstances under which judicial estop-pel may appropriately be invoked are probably not reducible to any general formulation of principle.”[130]
So, the Bumes Court formulated a different version of judicial estoppel, one appropriate for the situation before it. Judicial estoppel 'can apply even though the debtor’s inconsistent position in the District Court is not under oath. This no doubt explains why the Bumes opinion does not identify the position the debtor took under oath in that court.[131] All that matters is that the debtor got caught prosecuting a lawsuit he had concealed from the Bankruptcy Court. The Barger Court thereafter applied Bumes’s formulation of the doctrine to estop a bankruptcy trustee who had been substituted as plaintiff for the debtor, who lacked standing to sue.[132]
*1234 Under Barger, a trustee will be able to avoid summary judgment only if, on the evidence presented,[133] it could reasonably be inferred that at the time the debtor failed to disclose the claim and the litigation to the Bankruptcy Court, the debtor either lacked knowledge of the claim or a motive for concealing it or, conversely, that the nondisclosure was inadvertent or a mistake.[134]
As a practical matter, the evidence will yield neither inference.[135] Moreover, that the trustee lacked knowledge of the debt- or’s nondisclosure or the nondisclosure was the debtor’s lawyer’s fault is irrelevant.[136] In truth, to say that a trustee could avoid summary judgment if he established that the debtor’s nondisclosure was inadvertent or a mistake is to say that the trustee could not establish either fact. The words inadvertent and mistake are meaningless.
Given this reality, a bankruptcy trustee has two options. The first assumes that the value of the debtor’s previously undisclosed claim is such that it would be prudent to expend the funds necessary to seek en banc review of the Barger precedent. Two alternative routes to the en banc court would be available. The first would begin in the District Court. The trustee would intervene in the case the debtor brought in the District Court and suffer an adverse judgment there and in this court on appeal.[137] The second, would begin in the Bankruptcy Court. The trustee would commence an adversary proceeding and suffer an adverse judgment there, in the District Court,[138] and in this court on appeal.[139]
The second option, which the trustee would take if the value of the claim did not counsel taking the first option, would be to abandon the claim pursuant to 11 U.S.C. § 554,[140] in which event the claim would revert to the debtor. The claim would be worthless. The party potentially liable on *1235 the claim would not honor the claim because, if the debtor sued, judicial estoppel would bar the claim.[141]
In sum, as long as the Barger decision continues to be binding precedent, the trustee of the bankruptcy estate will be unable to step in for the debtor and prosecute the claim he tried to conceal from the Bankruptcy Court. By operation of law, .due to a judgment based on judicial estop-pel, the claim will be conveyed from the bankruptcy estate to the party potentially liable to the estate, or the claim will be abandoned to the debtor as a worthless asset.
Allowing the first of these two outcomes by continuing to apply a precedent that has long been detached from its moorings in equity only guarantees the very mockery of justice the doctrine of judicial estop-pel was designed to avoid.
III.
In Part III., having discussed the doctrine’s historical underpinnings at some length, I begin unpacking the effect of the judicial estoppel mandated by Burnes v. Pemco Aeroplex, Inc.[142] and Barger v. City of Cartersville[143] by explaining how their continued application fails both to preserve the integrity of the judicial system and to punish and deter oath-breaking. Then, I turn to the impropriety of fashioning such an equitable remedy in the face of the perfectly adequate range of criminal and civil legal remedies designed by Congress to apply across proceedings in the bankruptcy system, which are in clear tension with the invocation of judicial estoppel. I conclude my analysis with the observation that this state of affairs, which cannot be justified as an exercise of this or any court’s equitable power and works to impugn, rather than preserve, the judicial system’s integrity, must be set straight by the en banc court.
A.
1.
Before explaining why applying judicial estoppel as required by Burnes and Bar-ger fails to achieve that doctrine’s purpose, it is first necessary to flush out exactly what that purpose is and what it is not. Judicial estoppel, properly understood, is concerned with the “integrity of the judicial system, not the litigants.”'[144] It focuses on the “‘judicial process’”[145] — specifically, the intentional use of “ ‘inconsistent positions’ ”[146] or “ ‘inconsistent pleadings’ ”[147] to “manipulate the judicial system” [148] or to “ ‘make a mockery of the judicial system.’ ”[149] What might constitute *1236 “a mockery of justice” is elusive. Our cases don’t define the phrase.[150] I assume that the intentional manipulation of a judicial system would constitute a mockery of justice.
The doctrine’s sine qua non in the context we’re dealing with here is that the debtor’s position in the Bankruptcy Court is under oath and is false.[151] It is false because his position in the District Court is inconsistent with that position.[152] If the debtor’s position in the Bankruptcy Court is not under oath, the doctrine does not apply — even if the debtor intends to manipulate the judicial system.
Bumes and Barger involved two judicial systems,[153] the District Court’s and the Bankruptcy Court’s.[154] Did the District Court apply the doctrine of judicial estop-pel and bar the claims in those cases to protect the integrity of both judicial systems or only one? I posit that the District Court applied the doctrine to protect the system in the Bankruptcy Court only;[155] to cause future debtors to make a full disclosure of their assets — here, assets in the form of actionable claims for damages.[156]
*1237 The opinions in Burnes and Ba/rger all but say this explicitly. The opinions emphasize at length the need for debtors to disclose their assets and potential assets to the Bankruptcy Court as required by 11 U.S.C. §§ 521(a)(l)(B)(i) and (Hi). Moreover,
[t]he duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change. Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the federal bankruptcy system. For example, creditors rely on a debtor’s disclosure statements in determining whether to contest or consent to a no asset discharge. Bankruptcy courts also rely on the accuracy of the disclosure statements when considering whether to approve a no asset discharge. Accordingly, the importance of full and honest disclosure cannot be overstated.[157]
The Burnes and Barger debtors failed to disclose the claims they were pursuing, so the dispositive question became whether they intended to mislead the Bankruptcy Court. In both cases, the District Court found the intent to mislead as a matter of law and, applying the doctrine, granted summary judgment.[158] In affirming the judgments, this court made it clear that the invocation of judicial estoppel was necessary to protect the bankruptcy system, not the processing of litigation in the District Court.[159] Indeed, the opinions in Bumes and Barger have nothing to say about the judicial process in the District Court except to state, or imply, that the debtor took an inconsistent position in that court.[160] The inconsistent position made false the debtor’s position in the Bankruptcy Court and thus set the stage for judicial estoppel to perform its service — the protection of the integrity of the bankruptcy system.
The District Court does not need protection from a litigant’s assertion of an inconsistent claim (or defense), even where, in another proceeding, the litigant denied under oath the existence of the claim or defense. In fact, the assertion of inconsistent claims (or defenses) is commonplace in district court litigation. The Federal Rules of Civil Procedure permit their assertion. As Rule 8(d)(3) provides, “A party may state as many separate claims or defenses as it has, regardless of consistency.” [161]
*1238 The Bumes and Barger opinions contain no mention of Rule 8(d)(3), much less an explanation why it is inoperative when the previous statement was under oath, but operative when the previous statement was not under oath. I fail to comprehend why an oath should make a difference.
Prior inconsistent statements made under oath are ubiquitous in litigation regardless of the forum in which they are made. They occur in all sorts of settings — on deposition or in sworn answers to interrogatories in the case being litigated or in previous proceedings. Prior inconsistent statements are the stuff of impeachment on cross-examination. If made by a party, the party’s adversary may introduce them into evidence as admissions.[162]
Striking a meritorious claim that has been pled as permitted by Rule 8 — because the claimant previously swore that the claim did not exist — in order to protect the integrity of the judicial process in the District Court is inconceivable to me.[163] I cannot imagine a District Judge dismissing a cognizable claim simply because, the debtor previously stated under oath that the claim did not exist. The Barger Court, however, read Bumes as commanding District Judges to do just that, even though the claim no longer belongs to the debtor, but to the bankruptcy estate instead, and that the estate’s trustee is pursuing the claim for the benefit of the creditors, who are innocent of the debtor’s transgression.
In affirming the dismissal of the trustee’s claims, the Barger Court acknowledged that the trustee was faultless,[164] and thus beyond sanction. The court .also knew that the creditors would be bearing the loss of the claims’ value, which the District Court’s judgment would, by operation of law, transfer to the defendant as a pure windfall. The rationale for such a disposition is the one the court borrowed from Bumes, The trustee’s claim must be dismissed in order to stimulate the “neces.sary incentive [of future debtors] to provide the bankruptcy court with a truthful disclosure of [their] assets.”[165] Presumably, once debtors realized the harm they will cause their creditors if they are caught hiding their assets, and the shame that *1239 may engender, they may think twice. The loss of future relationship with some of their creditors will move debtors to make a truthful disclosure of their assets.
The Bankruptcy Court in Barger read Bumes as using judicial estoppel as a means of punishing oath-breaking. In overruling the City’s objection to the debt- or’s motion to reopen her Chapter 7 case, the court addressed the City’s Bumes-based argument — that the debtor had to pay a penalty for concealing her claims— thusly:
If there are adverse consequences that a debtor should suffer due to omission of a scheduled claim, there are punishments other than judicial estoppel that can be directed at a debtor, rather than the estate and creditors, such as sanctions under Fed.R. Bankr.P. 9011, revocation of the discharge, or denial of any exemption in the claim and its proceeds.[166]
Bumes and Barger imply that judicial es-toppel’s service is to stimulate the full disclosure, or deter the concealment, of debtors’ assets, not to punish the debtor. I agree with the Bankruptcy Court. The doctrine’s service is punishment.
2.
Having described the subtle yet crucial shift in the motivating rationale behind judicial estoppel that occurred in Burnes and Barger, it should not be hard to understand why borrowing an equitable remedy specially fashioned for the preservation of the integrity of the judicial system to punish inconsistent pleadings will fail to achieve either the former or the latter. Debtors will be prompted to make full disclosure of their assets, instead of hiding them, when they realize, on reflection, that if they are caught hiding them, they will be penalized. The ■ debtors in Bumes and Barger were caught, but were they penalized? They gave up property that wasn’t theirs. But that was the extent of it.[167]
Standing alone, relieving a thief of stolen property is unlikely to deter theft. If anything, it would encourage more theft. Applying the equitable remedy of judicial estoppel — to the exclusion of the extensive, but apparently inadequate, range of criminal and civil legal remedies for oath-breaking — would guarantee that all that would happen to debtors who get caught prosecuting undisclosed claims would be that those claims get dismissed. The only downside for the debtor, therefore, is the psychic cost to his conscience and the expense of bringing suit. There is simply no deterrence for the cold and calculating litigant, who stands to gain much and lose nothing.
B.
Not only is the particular equitable remedy Bumes and Barger created ineffective, but resorting to an equitable remedy to punish oath-breaking debtors itself is inappropriate, given the extensive range of perfectly adequate criminal and civil legal remedies with which the logic and effect of judicial estoppel are at odds. I accept for the moment that the doctrine’s objective is not to punish the debtor but to motivate debtors to make full disclosure of their assets[168] and turn to the effect Barger’s pursuit of that objective has on the Bankruptcy Court’s application of the rules and *1240 statutory provisions, criminal as well as civil, Congress has set in place to achieve it.[169] I begin, in Part IILB.l,, with Rule 1009 of the Federal Rulbs of Bankruptcy Procedure and 11 U.S.C. § 350 because their immediate purpose is to foster full disclosure of assets and thereby “secure the just, speedy, and inexpensive determination of every case and proceeding.”[170] Part III.B.2. next explains how Barger obstructs the Bankruptcy Court’s ability to use Rule 1009 and § 350 and the other tools it has been provided to foster full disclosure. And Part III.B.3. explains the intolerable dilemma Barger has created for the Bankruptcy Courts.
1.
The full and complete scheduling of a debtor’s assets as required by the Bankruptcy Code does not always happen. Omissions frequently occur in the Statement of Financial Affairs and Schedules of Assets and Liabilities a debtor files with his bankruptcy petition,[171] and they occur when, as in Bumes, the debtor amends his schedules as the bankruptcy estate is being administered.[172] The Supreme Court, in proposing Rule 1009 to Congress, and Congress, in adopting it,[173] realized this, so Rule 1009 provides that “[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed.”[174] These filings may be amended to include an asset of the bankruptcy estate whether the debtor’s failure to list the asset earlier was inadvertent or a mistake or was “calculated to make a mockery of the judicial system.”[175]
Sometimes a debtor’s failure to disclose an asset of the estate is not discovered *1241 until after the case is closed. Since the asset had never been scheduled and the bankruptcy trustee, obviously unaware of the asset, had not abandoned it, the asset is still property of the bankruptcy estate.[176] The asset is in limbo. The debtor can’t possess or otherwise realize it; neither can the trustee of the bankruptcy estate because he has been discharged. Congress anticipated this situation. In enacting 11 U.S.C. § 350, it gave the Bankruptcy Court discretion to reopen a closed case on “motion of the debtor or other party in interest,”[177] in order “to administer” for the benefit of the creditors an asset that had not been scheduled.[178] The court may exercise such discretion whether or not the debtor’s failure to schedule the asset was inadvertent or a mistake or was intentional.[179]
This is what happened in Barger. Bar-ger had not scheduled her claims for damages so she moved the Bankruptcy Court to reopen her Chapter 7 case to list them.[180] The City objected, citing Bumes, [181] If the City’s objection to reopening Barger’s case were an attempt to exercise control over Barger’s claims, it could constitute a violation of the stay that had automatically been put in place by 11 U.S.C. § 362(a)(3) the moment Barger filed her Chapter 7 petition.[182] The court, *1242 however, did not view the objection in that way. Instead, it treated the objection as the City framed it, an argument that Bar-ger should be punished for falsifying her schedules.[183] Accordingly, in ruling on the motion to reopen and the City’s objection, the court treated the motion and the objection as raising mutually exclusive issues.[184]
The court reopened the case because reopening is ordinarily granted for the benefit of the creditors — to enable the administration of assets of the estate that were not scheduled or abandoned by the trustee.[185] In the matter before it, the court said that “it [would be] incongruous to punish [Barger’s] creditors and impair their prospects for a potential recovery ... in order to improve the City’s judicial estoppel argument in the District Court.”[186] It therefore granted the debt- or’s motion.[187] The court left the issue of punishment for the District Court to decide.[188]
2.
Barger has obstructed the Bankruptcy Court’s ability to use the tools Congress has provided to motivate debtor compliance with the disclosure requirements of 11 U.S.C. §§ 521(a)(l)(B)(i) and (iii) and Rule 1007 of the Federal Rules of Bankruptcy Procedure.[189] And Barger did so not in an appeal, under 28 U.S.C. § 158(d)(1), from a District Court decision affirming or reversing on interlocutory appeal the Bankruptcy Court’s decision to reopen under 11 U.S.C. § 350, but in an appeal, under 28 U.S.C. § 1291, of the District Court’s decision estopping the trustee’s claims on summary judgment.
Barger nevertheless appears to be a de novo review of the Bankruptcy Court’s decision to reopen. It also gives the appearance that this court was exercising its supervisory power[190] over the Bankruptcy *1243 Court, instructing the court that, at bottom, it is to deny reopening in any case in which the debtor omitted to schedule a lawsuit he brought on a claim that belonged to the bankruptcy estate and filed a motion to reopen after the party he sued discovered the omission.
The District Court, following Burnes, estopped the estate’s claims for damages because Barger’s failure to schedule them after her complaint had been amended to seek damages against the City was neither inadvertent nor a mistake.[191] On appeal, the bankruptcy trustee argued that the Bankruptcy Court’s decision to reopen should be reviewed under the abuse-of-discretion standard and therefore affirmed unless the facts supporting the decision were clearly erroneous. Treating the case as if it were an appeal under § 158(d)(1), the trustee submitted that the findings of fact set out in the Bankruptcy Court’s order issued pursuant to Rule 52(a) of the Federal Rules of Civil Procedure were fully supported by the record and justified the court’s decision to reopen notwithstanding Barger’s failure to amend her schedules and list the lawsuit pending against the City.[192] The court found the failure irrelevant since the trustee knew about the litigation. This court, essentially disregarding the Bankruptcy Court’s findings and conclusions, found on the same record that Barger’s failure to amend her schedules was intentional, not inadvertent or a mistake, and therefore was a calculated attempt to manipulate the judicial system. Burnes required that the District Court’s application of judicial es-toppel be affirmed.
I translate the affirmance into a statement that the Bankruptcy Court abused its discretion in reopening Barger’s case because it based its decision on an error of law. This court held that the Bankruptcy Court erred in applying Bumes’s test for determining whether the debtor’s failure to amend her schedules amounted to a calculated attempt to manipulate the judicial system. That test, again, is whether the nondisclosure was inadvertent or a mistake. If Barger was unaware of the lawsuit or had no motive for pursuing it, the nondisclosure would be inadvertent and thus could not be considered a calculated attempt to manipulate the judicial system. But she failed the test: Barger was plainly aware of the lawsuit and had a motive for pursuing it; she would reap the benefit of any recovery the lawsuit might yield. Judicial estoppel accordingly ap *1244 plied as a matter of law. Because it did, the reopening constituted an abuse of discretion.
That said, I sense that the Barger Court did not view its decision as a review of the Bankruptcy Court’s decision to reopen. If it did, the court would have discussed § 350 and Rule 1009 and the policies and the Congressional intent they implement. But neither § 350 nor Rule 1009 was mentioned. They didn’t have to be. All that mattered was that Barger failed to amend her schedules to disclose the claims in litigation. The failure constituted a statement, under penalty of perjury, that she had no claims for damages pending against the City, a statement that Barger knew was false. Because it was, Barger, in making it, intended to manipulate the bankruptcy system.
. However one views the Barger Court’s § 1291 decision — whether it constituted a review of the Bankruptcy Court’s decision to reopen or punishment for the debtor’s false schedules — its negative effect on the ability of the Bankruptcy Courts to use the tools Congress provided to enhance full disclosure of assets is clear. As an initial matter, § 350 and Rule 1009, the primary tools for ensuring full disclosure, are for all practical purposes rendered inoperative. If a case has been closed, reopening the case under § 350 to allow the debtor to amend his schedules pursuant to Rule 1009 and list a previously nonscheduled claim will turn out to be a useless act once the party sued discovers the nondisclosure. The party will immediately move the District Court to dismiss the debtor from the case for lack of standing, and the court must grant the motion. If, after the debt- or’s schedules have been amended, the bankruptcy trustee persuades the District Court to vacate its dismissal and intervenes in place of the debtor or initiates an adversary proceeding in the Bankruptcy Court, the trustee will be confronted with judicial estoppel.
If a case remains open and the debtor amends his schedules to reveal the nondis-closed claim, the trustee will similarly be faced with judicial estoppel. Even if suit has not been filed, if the debtor’s claim is cognizable (and ready for suit) and the defendant potentially liable learns of the claim and informs the bankruptcy trustee, the defendant will have set the stage for invoking judicial estoppel to bar the trustee’s appearance in the District Court or before the Bankruptcy Court in an adversary proceeding.
Moreover, the secondary tools Congress has provided to enhance full disclosure of assets are also rendered practically inoperative.[193] The In re Barger Court opined that those tools, when used, are fully capable of deterring debtors from concealing their assets and that any deterrence judicial estoppel might provide would be problematic at best. Moreover, a full weighing of the equities — the effect on the interests of creditors, the debtor, the City and the public — counseled reopening the debtor’s case.
3.
In addition to rendering all but inoperative the tools Congress has provided to enhance the full disclosure of a debtor’s assets, Barger has created a serious dilemma for a Bankruptcy Court presented, as was the case in Barger, with a debtor’s •motion to reopen in order to schedule an unscheduled claim after the District Court has dismissed the claim because the debtor *1245 lacked standing to prosecute it. The Bankruptcy Court has two choices.' It can heed the dictates of Barger and sustain the objection to reopening. Or it can disregard the dictates of Barger and grant the debtor’s motion to reopen. I consider in order the consequences that result from the exercise of choices.
An immediate consequence of denying reopening is that the court may have sanctioned the violation of the automatic stay.[194] How? The court has placed its imprimatur on an “act[, i.e., the objection to reopening,] to exercise control over property of the estate.”[195] Assuming that the denial would not violate the stay, what happens to the asset, the claim? The claim occupies the same status it was occupying after the District Court dismissed the debtor’s case. The claim had neither been scheduled nor abandoned.[196] The claim “remains property of the estate.”[197] And under 11 U.S.C. § 362(c)(1), the automatic “stay of an act against [the unscheduled claim] continues until such property is no longer property of the estate.”[198] In short, since the claim cannot be disturbed, it remains in limbo. Because the claim is in limbo, the objecting party, who obtained the ruling he sought, has received a windfall. The windfall is an indefinite postponement of the reopening of the debtor’s bankruptcy case; following reopening it might be sued by the trustee or named as a respondent in an adversary proceeding. That is not likely to occur unless the claim is very valuable and the creditors have gone hence without day.
If the Bankruptcy Court disregards Barger’s dictates and reopens the case, the - consequences are those that flow from a debtor’s amendment of his schedules in a bankruptcy case that has not been closed. ;The trustee can move the District Court to vacate the dismissal of the debtor’s claim and obtain intervention or he can initiate an adversary proceeding in the Bankruptcy Court. Assuming that granting judg *1246 ment to the party the trustee is suing in order to punish the debtor for his post-petition conduct — filing false schedules— would not violate the automatic stay, the trustee will be estopped.
C.
Despite this court’s assertions to the contrary,[199] the supposedly equitable doctrine of judicial estoppel as formulated in Bumes and applied in Barger — supposedly a doctrine of inconsistent pleadings — is not a doctrine of inconsistent pleadings. Nor is it an equitable doctrine. Instead, it is a quasi-criminal sanction — created by this court and masked as judicial estoppel — to punish debtors who make false statements under oath about the existence of actionable claims they are prosecuting in the District Court. The application of this doctrine is akin to abuse of process, the common-law tort,[200] and thus impugns the integrity of the District Court. At the same time it blemishes the reputation of the Bankruptcy Court and impedes its ability “to secure the just, speedy, and inexpensive determination of every case and proceeding”[201] pending before it.
1.
The doctrine of judicial estoppel, as formulated first in McKinnon v. Blue Cross & Blue Shield of Alabama[202] and later in. New Hampshire v. Maine,[203] focuses on the second of the litigant’s two inconsistent pleadings or positions. The court strikes the second position, the one immediately before it, because the party is trifling or playing “fast and loose” with the court.[204] The Bumes-Barger doctrine focuses on the litigant’s position in the Bankruptcy Court, whether or not it is his second position. The question is instead whether the litigant’s position in the Bankruptcy *1247 Court is’ inconsistent with his position in the District Court. If it is, the court strikes the position in the District Court. That position is stricken because the position in the Bankruptcy Court, which the litigant took under oath, was false.
The position the litigant is pursuing in the District Court is a prepetition claim. It existed before’he petitioned the Bankruptcy Court for relief. If he files suit before repairing to the Bankruptcy Court, that is his first position; • he has a claim for damages. If he then files for bankruptcy and denies the existence of the claim, that is his second position; he has no claim for damages. Under the doctrine as formulated in McKinnon, the second position is' rejected. Under the Bumes-Barger doctrine, however, the first position is rejected.
If the litigant files for bankruptcy first and schedules no claim (because it does not then exist), and then files suit (because it does exist at some later point), the question becomes whether the claim was cognizable[205] when he filed for bankruptcy or became cognizable afterwards. If the claim became cognizable afterwards, his first bankruptcy position — that the claim does not exist — was true. Once the claim became cognizable and he filed suit, though, the litigant’s first position became false because he did riot update it, by amending his bankruptcy schedules, the moment the claim became cognizable. The litigant’s failure to amend itself becomes his second position and is accepted by the court while his first position is rejected as false.
In sum, it doesn’t matter which of the two inconsistent positions is the “second” position, that is, the one the divergent-sworn-positions-and-mockery-of-justice rule would reject, because the Bumes-Barger doctrine is not concerned with inconsistent pleadings. All that matters is that the debtor falsified his bankruptcy position under oath, and that cannot be tolerated.
2.
The Bumes-Barger doctrine is not an equitable doctrine because its application produces at-least-inequitable results, if not manifestly unjust ones, A debtor deprives his bankruptcy estate of an asset by con- ' cealing it. Then the District Court, acting as a court of equity, furthers the deprivation by giving the asset to the defendant, who owes the claim’s value to the bankruptcy estate, as a pure windfall. The estate’s creditors, who are totally innocent, provide the windfall. . The explicit rationale for doing this is that the deprivation deters future debtors from concealing assets of the bankruptcy estate. The implicit rationale is that the bankruptcy courts are either unwilling or incapable of providing such deterrence.[206]
All of this aside, I will assume that the Bumes-Barger doctrine is indeed an equitable doctrine and examine it in the light of the traditional maxims of equity.[207] I *1248 start with the parties whose interests the doctrine implicates. There is the party asserting the doctrine, the defendant. The defendant simply wants to avoid liability by having the estate’s claim rejected. The defendant’s role is that of an informant. It informs the court that the debtor has lied under oath in the Bankruptcy Court in failing to disclose the litigation at hand. Anyone aware of the debtor’s bankruptcy proceedings could perform the same service. The defendant, therefore, is simply not a party for purposes of weighing the equities.
The Bankruptcy Court, in contrast, is a party because the integrity of its processes and its reputation for competency are implicated. Likewise, the trustee is a party because, as part of his fiduciary duties, he must marshal and administer the assets of the bankruptcy estate. The trustee does that for the benefit of the creditors, so they, too, are parties. The debtor was a party, but he has exited the stage because his claim has, by operation of law, been transferred to the administration of his estate. His interest is in obtaining a discharge of his debts, and that is a matter the Bankruptcy Court will handle.
The District Court is also a party, and it also has at stake its integrity. Inconsistent pleadings, however, whether or not under oath, are of no concern. Rule 8(d) of the Federal Rules of Civil Procedure permits inconsistent pleadings, and in my view, equity would not countenance a judge-made rule to negate that feature of Rule 8. Neither is the fact that the trustee’s likely key witness in the suit, the debtor, lied under oath. Prior inconsistent statements, whether or not under oath, are grist for the litigation mill.
Additionally, applying judicial estoppel in the circumstances depicted in Barger and in the case at hand necessarily precludes the bankruptcy courts from exercising the case-specific discretion that Congress intended. I focus on the situation in Barger because the Bankruptcy Court’s interest in that case is a matter of record, as discussed in the In re Barger Court’s findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[208] In a nutshell, the Bankruptcy Court reopened the debt- or’s Chapter 7 case because Barger’s damages claims against the City had value and the creditors were entitled to the benefit of that value.
The District Court in Barger nevertheless estopped the trustee’s claims to punish Barger for failing to amend her schedules and list her claims against the City. But the Bankruptcy Court had already considered the matter of punishment. It was well aware of the sanctions the law provides — the criminal law and the bankruptcy law — and concluded that none applied. If the court had “reasonable grounds for believing” that Barger had committed perjury, it would have reported the matter to the U.S. Attorney, as required by 18 U.S.C. § 3057.[209] But no *1249 grounds were present.[210] The District Judge agreed with the Bankruptcy Judge. Otherwise, since § 3057 applies to a District Judge just as it applies to a Bankruptcy Judge, the' District Judge would have reported the matter to the U.S. Attorney. Yet, this court agreed with the District Judge that the debtor’s failure to amend her schedules constituted a false statement under oath, and that she had to be punished. The punishment? Not under the criminal law of perjury[211] or of contempt,[212] but under a judge-made rule that punishes innocent parties in the debt- or’s stead.
In the end, the parties with the most at stake, the Bankruptcy Court and the creditors, ask the District Court to -withhold the judicial-estoppel remedy. Rather than make them whole, it will cause them irreparable harm. In applying the doctrine notwithstanding their request and against the clear thrust of governing law, the District Court undermines its own integrity in the eyes of the public and implies that the Bankruptcy Court is either unwilling or incapable of overseeing debtor compliance with the law.
The only solution to this unfortunate predicament is the en banc court.
Appendix I.
*1250 [[Image here]]
† This visual aid should be read as follows. The arrows show that the language in the case at the tail of the arrow was adopted in the case at the head of the arrow. For example, Johnson Service'% “calculated assertion of divergent sworn positions” language was adopted in Chrysler Credit, indicating that two oaths were required for the application of judicial estoppel. Similarly, Johnson Service’s “made under oath in a prior proceeding” language was adopted in Salomon, and McKinnon's inheritance of the “calculated assertion of divergent sworn positions” language was adopted in Salomon, making it unclear whether one or two oaths were required. The cases proceed in roughly chronological order from the top-left corner to the bottom-right corner. The text inside each case box indicates whether there was federal-question or diversity jurisdiction in the case, whether it cited the language for one oath or for two oaths, and whether the case presented either a Burnes or a New Hampshire scenario. See note 1 of the Timeline of Judicial Estoppel Cases in the Eleventh Circuit for a brief explanation of these scenarios.
Timeline of Judicial Estoppel Cases in the Eleventh Circuit
*1251 Case name Citation Date Jurisdiction Burnes or NH? † One oath or two?‡
[[Image here]]
Appendix II.
The following is a list of court of appeals, district court, and bankruptcy court decisions within the Eleventh Circuit that cite Burnes v. Pemco Aeroplex, Inc,, 291 F.3d 1282 (11th Cir.2002), Barger v. City of Cartersville, 348 F.3d 1289 (11th Cir. 2003), or both as of February 22, 2016. I have included only cases that cite Burnes or Barger for judicial estoppel purposes. The first four columns indicate the year the case was decided, the court that decided the case, the ease name, and the ease *1252 citation. The last three columns are coded as follows. For the “Application of JE” column, “C.A.” indicates that the court cited and applied judicial estoppel, “C.N.A.” indicates that the court cited and did not apply judicial estoppel, “C.D.A.” indicates that the court cited the doctrine disapprovingly, but still applied judicial estoppel, and “C.D.N.A.” means the court cited the doctrine disapprovingly and did not apply judicial estoppel. For the “Burnes/Bar-ger” column, entries with only “Bumes” or “Barger” mean that only that one case was cited, and an entry of “Burnes/Barger” means both cases were cited. For the final, “Bankruptcy Context” column, “Yes” indicates that the case occurred in the bankruptcy context, and “No” indicates that the case did not occur in the bankruptcy context.
* Subsequent case history omitted from citation.
*1253 [[Image here]]
*1254 [[Image here]]
*1255 [[Image here]]
*1256 [[Image here]]

. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir.2002).

. Barger v. City of Cartersville, 348 F.3d 1289 (11th Cir.2003).

. See In re Slater, No. 11-02865 (Bankr.N.D.Ala. June 2, 2011).

. See Burnes, 291 F.3d at 1285 (quotation marks omitted) (quoting Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302, 1308 (11th Cir.2001), vacated on other grounds, 537 U.S. 1085, 123 S.Ct. 718, 154 L.Ed.2d 629 (2002)).

. Slater amended her petition to reflect her suit against U.S. Steel only after U.S. Steel submitted to the District Court its motion for summary judgment based on judicial estop-pel. Per Rule 1009(a) of the Federal Rules of Bankruptcy Procedure, Slater was allowed to amend her petition as a matter of course since the case was still open. See Fed. R. Bankr.P. 1009(a). The hearing at which Slater’s suit was discovered by the Bankruptcy Court concerned a motion to convert the case from Chapter 7 bankruptcy, to Chapter 13 bankruptcy and an application to employ counsel. Both the motion and the application were eventually granted. U.S. Steel had also moved the District Court to bar Slater’s claim for lack of standing because the trustee of the bankruptcy estate, not Slater, was the only party who could properly maintain the employment-discrimination suit when it was in Chapter 7 bankruptcy. The District Court ultimately declared the standing question moot because, once she became a Chapter 13 *1211 debtor in possession, Slater had standing herself to sue on behalf of the bankruptcy estate.

.Hr’g on Mot. to Convert to Chapter 13 Bankruptcy and Trustee Appl. to Employ Roderick Graham and Charles Tatum at 8:35-8:38, In re Slater, No. 11-02865 (Bankr.N.D.Ala. Sept. 27, 2011). Nondisclosed lawsuits and settlements would normally come to the Bankruptcy Judge’s attention on a motion to reopen the case pursuant to 11 U.S.C. § 350. If a case were still open, the debtor would not need to bring the matter to the court’s attention because Rule 1009 of the Federal Rules of Bankruptcy Procedure gives the debtor the right to amend his schedules "as a matter of course at any time” while the case is open, without obtaining leave of court. See infra note 85. The reason why the Judge commented on the matter was because the trustee was requesting the court’s approval to employ counsel to pursue Slater’s claims against U.S. Steel.

. Burnes, 291 F.3d at 1285 (quotation marks omitted) (quoting Salomon, 260 F.3d at 1308).

, Also included in two appendices to this-opinion, in order to assist the reader to make out the development of the doctrine of judicial estoppel in the Eleventh Circuit, are a chart and timeline laying out the relevant case law and a compendium of the hundreds of cases invoking Bumes and Barger in the Eleventh Circuit.

. Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

. Id.

. Burnes v. Pemco Aeroplex, Inc., 291 F,3d 1282, 1286 (11th Cir.2002) (quotation marks omitted).

. Id. (quotation marks omitted).

. Fed. R. Bankr.P. 1001; see Hon. Stephen A. Stripp, An Analysis of the Role of the Bankruptcy Judge and the Use of Judicial Time, 23 Seton Hall L.Rev. 1329, 1336-37 (1993) ("The bankruptcy judge ... has traditionally had other, nonadjudicative duties which are unique to the bankruptcy process." (citing H.R.Rep. No. 95-595, at 88 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6050)).
H.R.Rep. No. 95-595, at 88 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6050 provides:
Bankruptcy is an area where there exists a significant potential for fraud, for self-dealing, and for diversion of funds. In contrast to general civil litigation, where cases affect only two or a few parties at most, bankruptcy cases may affect hundreds of scattered and ill-represented creditors.... In bankruptcy cases, ... active supervision is essential. Bankruptcy affects too many people to allow it to proceed untended by a[n] impartial supervisor.
(footnotes omitted). As a caveat, the above language is in reference to the Bankruptcy Act of 1898, which was superseded by the Bankruptcy Act of 1978, which in turn was held unconstitutional. See N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S, 50, 87-88, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982) (plurality opinion); see also Stern v. Marshall, 564 U.S. 462, 131 S.Ct. 2594, 2620, 180 L.Ed.2d 475 (2011). The sentiment still holds generally true.

. United States v. Dennis, 237 F.3d 1295, 1299 (11th Cir.2001) (quotation marks omitted).

. 11 U.S.C. § 541(a).

. 11 U.S.C. § 362.

. Id. § 362(a)(3).

. In a Chapter 7 bankruptcy, the trustee and the debtor are two separate individuals, whereas in Chapter 13 proceedings, the debt- or may step into the shoes of a trustee, and in this capacity is named the "debtor in possession.” See 11 U.S.C. § 1303; Fed. R. Bankr.P, 6009. In Chapter 7 proceedings, only the trustee has standing to pursue claims on behalf of the estate, 11 U.S.C. § 323(a); Barger v. City of Cartersville, 348 F.3d 1289, 1292 (11th Cir.2003), whereas in Chapter 13 proceedings, when the debtor is acting as the debtor in possession, she retains standing to pursue claims on behalf of the estate. 11 U.S.C. § 1303; Fed. R. Bankr.P. 6009; Crosby v. Monroe Cty., 394 F.3d 1328, 1331 n. 2 (11th Cir.2004).

. See 11 U.S.C. § 323(a).

. See Mosser v. Darrow, 341 U.S. 267, 271, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951).

. 28 U.S.C. § 1334.

. Id. § 157(a).

. Id. § 158(a).

. Fed. R. Bankr.P. 7052; Fed. R. Bankr.P. 9014(c); Fed.R.Civ.P. 52; e.g., In re Herman, 737 F.3d 449, 452 (7th Cir.2013).

. 28 U.S.C. §§ 158(d)(1), 1254(1), 1291.

. United States v. Dennis, 237 F.3d 1295, 1299 (11th Cir.2001) (quotation marks omitted)

, 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 4477 (2d ed.2002) (emphasis added).

. There are two exceptions: City of Riviera Beach v. That Certain Unnamed Gray, Two-story Vessel Approximately Fifty-seven Feet in Length, 649 F.3d 1259 (13th Cir.2011), rev'd on other grounds sub nom. Lozman v. City of Riviera Beach, 568 U.S.-, 133 S.Ct. 735, 184 L.Ed.2d 604 (2013) and Tampa Bay Water v. HDR Eng’g, Inc., 731 F.3d 1171 (11th Cir.2013). See ante at 1209 n, 21. The party asserting the doctrine in Riviera Beach was a party in the earlier proceeding in which its adversary took the allegedly inconsistent position — the New Hampshire scenario. Ante at 1200. Tampa Bay Water presented a one-case scenario, in which a party took the allegedly inconsistent positions in the same suit. See infra note 129. The doctrine of judicial estop-pel the court considered in these two cases resembled a combination of the "narrowest approach” and the "more open approach” Wright, Miller & Cooper describe because in each case, the court considered whether there was reliance by a party, in accordance with the "narrowest approach,” and whether there was reliance by a court, in accordance with the "more open approach.” Specifically, the court considered the following factors in each of the two cases:
(1) whether there is a clear inconsistency between the earlier position and the later position; (2) a party’s success in convincing a court of the earlier position, so that judicial acceptance of the inconsistent later position would create the perception that either the earlier or later court was misled; and (3) whether the inconsistent later position would unfairly prejudice the opposing party.
Tampa Bay Water, 731 F.3d at 1182; Riviera Beach, 649 F.3d at 1273.

. Bumes cited both the two-oath and the one-oath requirement. Burnes, 291 F.3d at 1285. Bumes applied judicial estoppel when only one oath was present thereby making clear that it was modifying the doctrine to only require one oath. Id. at 1286. The development in Bumes dropping the second-oath requirement likely occurred in recognition that the Federal Rules of Civil Procedure do not require verified pleadings.

. As mentioned above, a timeline and chart tracking the progress of these cases is included in Appendix I.

. Eleventh Circuit precedent includes the decisions of the former U.S. Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981, the effective date of the division of the Fifth Judicial Circuit into the current Fifth Judicial Circuit and the Eleventh Judicial Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

. Livesay Indus., Inc. v. Livesay Window Co., 202 F.2d 378 (5th Cir.1953). Livesay was a patent infringement action. The District Court held that on the basis of the judgment in Livesay v. Drolet, 38 F.Supp. 885 (S.D.Fla.1941), which upheld the validity of the plaintiff’s patent, the defendant was barred "on the grounds of res adjudicata and estoppel” from contesting the validity of the plaintiff’s patent. The Fifth Circuit affirmed, holding that the judgment in Livesay v. Drolet estopped the defendant on the validity issue: "where one in whose favor a judgment is rendered accepts the benefits, he is estopped from questioning the validity, of the judgment in any subsequent litigation." Livesay Indus., 202 F.2d at 382. After so holding, the court added this statement about the doctrine: ”[I]t ought to be, we think it is, clear that, upon every principle of judicial estoppel, including the estoppel arising out of inconsistent positions in legal proceedings, defendant may not, as it attempts to do here, so trifle with the judicial process.” Id. (footnote omitted).
As the late Judge Robert M. Hill subsequently observed in USLIFE Corp. v. U.S. Life Insurance Co.,
The law of the Fifth Circuit ... is scant on the subject of judicial estoppel.... It may be observed that in each of the cases that this Court has discovered where the doctrine was applied, the party to be estopped was, in fact, previously successful in its urging of its inconsistent position. However, in none of these cases did the Fifth Circuit undertake an elaboration of the requisites for the application of judicial estop-pel.
560 F.Supp. 1302, 1305-06 (N.D.Tex.1983) (footnote omitted).

. Johnson Serv. Co. v. Transamerica Ins. Co., 485 F.2d 164 (5th Cir.1973).

. See ante 1200-01,

. Long v. Knox, 155 Tex. 581, 291 S.W.2d 292 (1956).

. Johnson Serv., 485 F.2d at 174 (quotation marks omitted) (citations omitted) (quoting Long, 291 S.W.2d at 295).

. Id. at 175 (emphasis added). The Johnson Service Court ultimately held the doctrine inapplicable. See id. at 175.

. Ante at 1200.

. Am. Nat’l Bank of Jacksonville v. Fed. Deposit Ins. Corp., 710 F.2d 1528 (11th Cir.1983).

. This court’s opinion does not indicate the state-law source of the doctrine the court applied. The opinion cites Johnson Service's formulation of judicial estoppel, so I assume that the parties' briefs cited Johnson Service for the state-law source of the doctrine. As it turned out, the court held the doctrine inapplicable.

. See Am. Nat'l Bank, 710 F.2d at 1536 (citing Johnson Serv., 485 F.2d at 174).

. Id. American National Bank was this court’s initial use of the phrase "mockery of justice” and "making a mockery of justice by inconsistent pleadings.” Id. Webster's defines "mockery” variously as "insulting or contemptuous action or speech: derision”; "a subject of laughter, derision, or sport”; "a counterfeit appearance: imitation”; “something ridiculously or imprudently unsuitable”; and "an insincere, contemptible, or impertinent imitation.” Mockery, Webster’s Third New international Dictionary (3d ed,1993). Under this last definition, the usage "arbitrary methods that made a mockery of justice” is given as an example. Id.
The former Fifth Circuit had used the phrase "mockery of justice” but only in habe-as cases. Williams v. Beto, the seminal case for the phrase, expressed it in these words:
It is the general rule that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation.
354 F.2d 698, 704-05 (5th Cir.1965) (emphasis added) (citations omitted).

. Chrysler Credit Corp, v. Rebhan, 842 F.2d 1257 (11th Cir.1988), abrogated on other grounds by Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

. The issue was whether a debt was dis-chargeable under 11 U.S.C. §§ 523(a)(4) and (6). See Chrysler Credit, 842 F.2d at 1258.

, For consistency, brevity, and clarity, I use the terms "debtor,” "trustee,” and "defendant” to the extent practicable. The "debtor” is, of course, the debtor in bankruptcy. The "trustee” is the appointed trustee in the bankruptcy proceeding. The “defendant” is the party against which the debtor or trustee is asserting a claim in District Court. This claim is typically the claim that has not been listed as an asset in the bankruptcy proceeding.

. Chrysler Credit sued Rebhan in a North Carolina court, and Rebhan counterclaimed, asserting a position contrary to the position he was advancing in the Bankruptcy Court. Unlike the situation in New Hampshire, where New Hampshire prevailed against Maine in the prior proceeding and Maine pled judicial estoppel as a defense in the second proceeding, Rebhan did not prevail in the prior proceeding on his counterclaim against Chrysler Credit, The Bankruptcy Court applied the doctrine merely because Rebhan made incon- ' sistent statements under oath in each of the two proceedings. In re Rebhan, 45 B.R. 609, 612 (Bankr.S.D.Fla.1985). In doing so, the Bankruptcy Court, and this court on appeal, effectively reiterated what the Johnson Service Court, referring to Texas common law, had said: "[Judicial .estoppel] is to be distinguished from equitable estoppel based on inconsistency in judicial proceedings because the elements of reliance and injury essential to equitable estoppel need not be present.” Johnson Serv., 485 F.2d at 174. In brief, Rebhan was estopped solely because the position he was asserting under oath in the Bankruptcy Court was contrary to the position he had previously asserted before the North Carolina court.

. Chrysler Credit, 842 F.2d at 1261.

. Id. (quoting Johnson Serv., 485 F.2d at 174 (quotation marks omitted)). The same language the court took from Johnson Service appears in the American National Bank opinion, which the Chrysler Credit opinion does not cite.

. The Chrysler Credit opinion does not mention the Johnson Service opinion’s statement that "[bjecause [judicial estoppel] looks toward cold manipulation and not an unthinking or confused blunder, it has never been applied where plaintiff's assertions were based on fraud, inadvertence, or mistake.” See Johnson Serv., 485 F.2d at 175. A statement by this court to the effect that judicial estoppel does not apply where the plaintiff’s position in the prior proceeding was inadvertent or mistaken next appeared in Burnes, 291 F.3d at 1286-87.

. McKinnon v. Blue Cross & Blue Shield of Ala., 935 F.2d 1187 (11th Cir.1991). The lawsuit was a private cause of action brought under 29 U.S.C. § 1132 for an alleged violation of 29 U.S.C. § 1140, the anti-retaliation provision of the Employee Retirement Income Security Act of 1974, 88 Stat, 829, as amended, 29 U.S.C. § 1001 et seq. McKinnon, 935 F.2d at 1189-90.

. Id. at 1192 (quotation marks omitted) (quoting Am. Nat'l Bank, 710 F.2d at 1536). The McKinnon opinion does not cite Chrysler Credit, which had adopted judicial estoppel as federal law and constituted precedent that bound the McKinnon Court. But McKinnon, in citing American National Bank, repeated the Chrysler Credit expression that judicial ■ estoppel is applied to "the calculated assertion of divergent sworn positions.” Id. McKinnon added a gloss to that Chrysler Credit expression, a gloss that, in my view, Chrysler Credit precedent did not foreclose: "The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings.” Id. (quotation marks omitted) (quoting Am. Nat’l Bank, 710 F.2d at 1536). This "gloss” came from the state-law decision American National Bank, and McKinnon adopted it into federal law.

. The doctrine of judicial estoppel had no bearing on the McKinnon. decision because McKinnon failed to establish that the position Blue Cross and Blue Shield of Alabama was asserting was inconsistent with a position it had asserted in a prior proceeding. Id. at 1192-93.

. Talavera v. Sch. Bd. of Palm Beach Cty., 129 F.3d 1214 (11th Cir.1997). Talavera presented a Bumes scenario. Talavera, a secretary working for the School Board of Palm Beach County, became unable to perform her job, and her one-year renewable contract was *1219 not renewed. Id. at 1215. Claiming that she was totally disabled, she applied for and received disability benefits from the Social Security Administration ("SSA”), then sued the School Board under the Americans with Disability Act (“ADA”), alleging that the Board had violated her rights under the ADA by failing to accommodate her disability and refusing to renew her contract because of it. Id. at 1216.
The District Court granted the School Board summary judgment on the ground that Talavera was "judicially estopped from claiming she was a ‘qualified’ individual with a disability under the ADA, having certified to the SSA that she was totally disabled.” Id. Applying the divergent-sworn-positions-and-mockeiy-of-justice rule, we reversed the District Court’s judgment and remanded the case for further proceedings because the statements Talavera made in support of her SSA application "d[id] not rule out the possibility that she could perform the essential functions of her job with reasonable accommodation.” Id. at 1221.
We said, in the words of McKinnon, "Judicial estoppel ‘is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings.’ ” Talavera, 129 F.3d at 1217 (quoting McKinnon, 935 F.2d at 1192).

.Taylor v. Food World, Inc., 133 F.3d 1419 (11th Cir.1998). Taylor presented a Bnmes scenario with facts similar to those in Talav-era. The case involved statements by Gary Taylor’s guardian, Patricia Taylor, made in an ADA lawsuit that were allegedly inconsistent with statements she had previously made in the application she submitted on Gary’s behalf to the SSA for disability benefits. Id. at 1421. After referring to the Talavera decision, in which “this court addressed the issue of whether a plaintiff who applies for and receives disability benefits is per se judicially estopped from later bringing a claim under the ADA,” id. at 1423 (citing Talavera, 129 F.3d at 1214), we said:
[T]his court determined that a certification of total disability ón a disability benefits application is not inherently inconsistent with being ‘qualified’ under the ADA. This court reasoned that the SSA, in determining whether an individual is entitled to disability benefits, does not take account of the effect of reasonable, accommodation on an individual’s ability to work. Accordingly, the determination of whether an individual who has certified total disability to the SSA is judicially estopped from later bringing a claim under the ADA will depend upon the specific statements made in the application and other relevant evidence in the record.
Id. (citations omitted). On the record before us, we found that the statements Gary Taylor made in the application to the SSA did not rule out the possibility that he was a " ‘qualified’ individual ... who can perform [his] job 'with or without accommodation/ ” Id. at 1425.
The court quoted McKinnon in describing the doctrine: “Judicial estoppel ‘is applied to the calculated assertion of divergent sworn positions ... [and] is designed to prevent parties from making a mockery of justice by inconsistent pleadings.’ ” Id. at 1422 (alteration in original) (quoting McKinnon, 935 F.2d at 1192).

. Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302 (11th Cir.2001), vacated on other grounds, 537 U.S. 1085, 123 S.Ct. 718, 154 L.Ed.2d 629 (2002). Salomon, like Chrysler Credit and McKinnon, presented a New Hampshire scenario.

. In diversity cases, judicial estoppel is governed by state law under the Erie doctrine. See, e.g., Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc., 44 F.3d 925, 930 (11th Cir.1995) (per curiam) (citing Chrysler Credit, 842 F.2d at 1261). The Salomon Court therefore erred by looking to the federal divergent-sworn-positions-and-mockery-of-justice rule rather than the relevant judicial-estoppel rule under the applicable state law.

. Salomon, 260 F.3d at 1308. (emphasis added). The Salomon opinion cites three cases in support of the quoted statement. See id. (citing McKinnon, 935 F.2d at 1192; Taylor, 133 F.3d at 1422; Johnson Serv., 485 F.2d at 174-75). McKinnon includes a statement— judicial estoppel is “designed to prevent parties from making a mockery of justice by inconsistent pleadings,” McKinnon, 935 F.2d at 1192 — relating to the second element espoused by the Salomon Court, without affirmatively requiring proof that the inconsistencies be calculated to make a mockery of the judicial system. As to the second element, McKinnon contains a statement mandating an assertion of “divergent sworn positions," rather than inconsistent positions made under oath in a prior proceeding. Id. Taylor contains no statement resembling the quoted statement. The Johnson Service citation refers to the requirement that the first of the divergent positions must be made under oath in a prior proceeding, but does not mention the second element:
Long v. Knox specifically applies the estop-pel only in the event that pleadings have been made under oath in a prior proceeding. The December 16 letter [which contained the prior inconsistent statement], however, was not included in plaintiff’s pleadings in the state court suit. Moreover, the original petition filed in state court was not made under oath, nor was it required to be by the Texas Rules of Civil Procedure. Johnson Serv., 485 F.2d at 175 (footnote omitted). Johnson Service also says that there must be "divergent sworn positions.” Id. It does not describe the second of the divergent sworn positions, which is the statement that triggers application bf judicial estoppel. See id.

. Salomon is the first of the then-newly established Eleventh Circuit’s judicial-estoppel decisions to use the term “a prior proceeding”- in articulating the burden of proof a party asserting judicial estoppel assumes. The party invoking the doctrine, Harvey, argued that the position Salomon Smith Barney had taken in the Florida District Court of Appeal during an earlier proceeding was inconsistent with the position it was asserting in the District Court and therefore should be estopped. Salomon, 260 F.3d at 1308; ante at 1204-05, n, 17. Salomon presumably cites the former Fifth Circuit's opinion in Johnson Service for the “prior proceeding” language. Id. Johnson Service also used an apparently equivalent term, "a former proceeding,” in explaining that “[u]nder the doctrine of judicial estoppel ... a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary to the assertion sought to be made.” Johnson Serv., 485 F.2d at 174 (emphasis added) (quotation marks omitted).

. In Bumes and Barger, the "prior proceeding” is the proceeding in which the debtor made the false statement under oath that triggered the application of judicial estoppel (after the debtor was caught). As indicated in the following text, that proceeding could be a proceeding that, despite its label, occurs later in time. My use of the term "a prior proceeding” throughout this special concurrence should be read as incorporating this use of the term and as referring to another proceeding.

. For example, in Barger, the debtor brought the District Court action first, then filed a Chapter 7 petition in the Bankruptcy Court. Barger, 348 F.3d at 1291. The proceeding in which the debtor made the false sworn statement that triggered the application of judicial estoppel, that is, her failure to amend her schedules to disclose the District Court litigation, was the Chapter 7 case, the so-called "prior proceeding." See id. In Bumes, the debtor petitioned the Bankruptcy Court for Chapter 13 relief first, then brought suit in the District Court. Burnes, 291 F.3d at 1284. The proceeding in which the debtor made the false sworn statement that triggered the application of judicial estoppel — that is, his failure to list the District Court litigation in amending his schedules pursuant to an order the Bankruptcy Court issued when it converted his Chapter 13 case to a Chapter 7 case — was the Chapter 7 case. See id. In this case, Slater brought suit in the District Court first, then 21 months later filed a Chapter 7 petition in the Bankruptcy Court. The false statement that triggered the application of judicial estoppel occurred in the Bankruptcy Court, in the "prior proceeding,” when she failed to list the lawsuit at the time she filed her Chapter 7 petition.
Under Bumes and Barger, it is always the case that judicial estoppel is triggered in a situation where the debtor files for bankruptcy, omits to list an actionable claim as an asset either in his initial bankruptcy filings (if the claim is then cognizable) or in an amendment to the filings (when the claim becomes cognizable or he sues on the claim in the District Court), and his adversary discovers the omission. If, as is the situation here, the debtor pursues the claim in the District Court before filing for bankruptcy, the application of judicial estoppel depends on when he lists the lawsuit in his bankruptcy filings. If he lists the lawsuit in conjunction with the filing of his petition, the doctrine does not apply. If he lists the lawsuit after his adversary discovers that it has not been listed, the doctrine applies.
In United States v. Campa, 459 F.3d 1121 (11th Cir.2006) (en banc), a criminal prosecution, one of the defendants’ arguments was that "the government’s subsequent legal position in the Ramirez case constituted prosecu-torial misconduct that warranted] a new trial.” Id. at 1152 (emphasis added). We thought the argument was essentially a claim of judicial estoppel and said this, citing Bumes:
Judicial estoppel bars a party from asserting a position in a legal proceeding that is inconsistent with its position in a previous, related proceeding. It "is designed to prevent parties from making a mockery of justice by inconsistent pleadings.” Courts consider two factors in determining whether to apply the doctrine: whether the "allegedly inconsistent positions were made under oath in a prior proceeding ” and whether such inconsistencies were "calculated to make a mockery of the judicial system.”
Campa, 459 F.3d at 1152 (footnotes omitted) (quoting Burnes, 291 F.3d at 1285). We then held that judicial estoppel was inapplicable
because Ramirez was not a related proceeding, but rather an employment discrimination lawsuit. Moreover, the position that the government took in Ramirez occurred subsequent to — not before — its position in this case. The government filed its motion for change of venue in Ramirez on June 25, 2002, more than one year after the defendants were convicted. Therefore, the defendants’ argument that the government should have been estopped from opposing its change of venue motions in a prior proceeding is chronologically unsound, and the court did not abuse its discretion in denying the defendants' motion for new trial based on newly discovered evidence.
Id. (emphasis added) (footnotes omitted). The fact that Bumes and Barger, which the court did not cite, treated a subsequent proceeding as “a prior proceeding” — because the subsequent proceeding was the only proceeding in which a position was taken under oath — was not mentioned. Given the court’s silence on the point and the Supreme Court’s *1222 statements in New Hampshire that "Courts have observed that ‘[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle,’ ” and that it was "not establishing] inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel,” New Hampshire, 532 U.S. at 750-51, 121 S.Ct. at 1815 ‘(alteration in original) (quoting Allen v. Zurich Ins. Co,, 667 F.2d 1162, 1166 (4th Cir.1982)), I do not view Campa as having overruled by implication any aspect of the holdings of Bumes or Barger. Rather Campa confirms that the Bumes-Barger formulation of judicial estoppel extends beyond the bankruptcy context.

. In fact, the Bumes and Barger opinions contain not a word about the inconsistent position stated by the debtor under oath in the District Court.

. In effectively eliminating the divergent-sworn-positions-and-mockery-of-justice rule’s requirement of “divergent sworn positions,” Burnes expanded judicial estoppel’s reach far beyond that contemplated by this court when, in Chrysler Credit and McKinnon, it incorporated the doctrine (as artictdated in American National Bank) into the law of the Eleventh Circuit for application in cases presenting the New Hampshire scenario and then, in Talavera and Taylor, for application in cases presenting the Bumes scenario. Absent the divergent-swom-positions requirement endorsed in those decisions, a plaintiff could file suit in the District Court and litigate the case to final judgment on a claim the existence of which the plaintiff denied under oath in a “prior proceeding.” The District Court's entertainment of such a claim would not result in a mockery of justice for two reasons. First, Rule 8(d)(3) of the Federal Rules of Civil Procedure permits the pleading of inconsistent claims (and defenses). Second, the plaintiff’s adversary would impeach him with his prior inconsistent sworn statement. See infra notes 161— 163 and accompanying text.

. New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

. See id. at 750-51, 121 S.Ct. at 1815.

. Id. at 751, 121 S.Ct. at 1815.

. See Burnes, 291 F.3d at 1285.

. Id. (citation omitted) (quoting Salomon, 260 F.3d at 1308).

. Id. at 1285-86.

. The court made no mention of the position the debtor took under oath in the District Court. The fact that the debtor brought suit on a claim he did not disclose to the Bankruptcy Court apparently constituted a "position” that rendered inconsistent the "position” the debtor took under oath in the Bankruptcy Court and thus established the first element of the two-element statement. Id. at 1286.

. Id. Implicit in the court's statement was the notion that the debtor’s failure to disclose the lawsuit against his employer in amending the schedules in his Chapter 7 case was the functional equivalent of a false statement under oath that the claim did not exist. See ante at 1205-06 & n. 18.

. Burnes, 291 F.3d at 1287.

. Id. The Burnes Court cited, among other cases, Payless Wholesale Distribs. Inc. v. Alberto Culver (P.R.), Inc., 989 F.2d 570 (1st Cir.1993), which the court characterized as "holding that judicial estoppel barred a former debtor from asserting racketeering, antitrust and fraud claims because the debtor intentionally failed to disclose the claims in a prior bankruptcy proceeding, . even though [the debtor] knew about the claims and had the motive to conceal them.” Burnes, 291 F.3d at 1287. The Burnes Court also turned its focus to Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417-18 (3d Cir.1988), in which the Third Circuit held, *1224 "Oneida had knowledge of its claim when it completed the schedule of assets in the bankruptcy, and ... it also had the motive to conceal the claims because creditors may have voted against the reorganization had they known about the potential offset.” Burnes, 291 F.3d at 1287.
Judicial estoppel is triggered when the debtor breaches the duty of disclosure (and his adversary in the district-court action discovers the breach). The time of the breach is critical. See ante at 1205-06 & n. 18; see also Love v. Tyson Foods, Inc., 677 F.3d 258, 262 (5th Cir.2012) (observing that "whether Love had a financial motive to conceal his claims against Tyson at the time Love failed to meet his disclosure obligations ... is the relevant time frame for the judicial estoppel analysis.”); Robinson v. Tyson Foods, Inc,, 595 F.3d 1269, 1276 (11th Cir.2010) ("When reviewing potential motive, the relevant inquiry is intent at the time of non-disclosure.” (emphasis added)).

. Burnes, 291 F.3d at 1287 (" '[T]he debtor’s failure to satisfy its statutory disclosure duty is "inadvertent” only when, in general, the debtor either lacles knowledge of the undisclosed claims or has no motive for their concealment.’ ” (quoting In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir.1999))).

. Id. The court does not identify the "judicial system” — whether the Bankruptcy Court or the District Court — the debtor intended to manipulate. See infra note 153. I suggest that it was the Bankruptcy Court's because the intent to manipulate occurred at the moment the debtor amended his bankruptcy schedules but omitted to disclose his Title VII claim and the litigation against his employer.

. Burnes, 291 F.3d at 1288.

. Id.

. Barger v. City of Cartersville, 348 F.3d 1289 (11th Cir.2003).

. Id, at 1297 (quoting Burnes, 291 F.3d at 1288).

. Id, at 1291.

. Id.

. Id.

. Id. In Bumes, the court held that the debt- or’s "undisclosed claim for injunctive relief offered nothing of value to the estate and was of no consequence to the trustee or the creditors.” Burnes, 291 F.3d at 1289 (emphasis added). Thus, the debtor's failure to schedule that claim did not constitute a breach of the disclosure requirements of 11 U.S.C. § 521(a)(l)(B)(i) and (iii), and Rule 1007 of the Federal Rules of Bankruptcy Procedure. See infra notes 171-175 and accompanying text. Relying on Burnes, the Barger Court came to the same conclusion regarding “Bar-ger’s claim for injunctive relief (i.e. her request for reinstatement).” See Barger, 348 F.3d at 1297.

. Without elaboration, this court attributed to the trustee the debtor’s conduct in concealing her claims against the City and the pending District Court litigation even though "it seem[ed] clear that Barger [had] deceived the trustee.” Barger, 348 F.3d at 1296.
Barger did not tell the trustee that she was ... seeking ... liquidated damages, compensatory damages, and punitive damages. She did not inform the trustee about these additional damages even though she added them to her prayer for relief [in the District Court litigation] a mere two days before the creditors meeting [conducted by the trustee].

id.

. There appears to be an additional wrinkle not dealt with by the courts in the Barger litigation that is worth mentioning. It relates to the automatic stay created by 11 U.S.C. § 362. Section 362 provides, in pertinent part, that the filing of a voluntary petition for bankruptcy relief "operates as a stay ... of any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), and that "the stay of an act against property of the estate ... continues until such property is no longer property of the estate,” id. § 362(c)(1).
When the City opposed the debtor’s, Bar-ger’s, motion to reopen her Chapter 7 case on the ground that the trustee would.be estopped to pursue the claims that she had been litigating in the District Court, the City was engaging in an "act to obtain possession of property of the estate.” That act was a nullity. See United States v. White, 466 F.3d 1241, 1244 (11th Cir.2006) ("It is the law of this Circuit that ‘[a]ctions taken in violation of the automatic stay are void ’and without effect.' ” [quoting Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir.1982))). In the same vein, if the City initiated an adversary proceeding in the Chapter 7 case to obtain a declaration that the claims at issue belonged to the City via the operation of judicial estoppel, that proceeding would be a nullity as well.

. In re Barger, 279 B.R. 900, 901 (Bankr.N.D.Ga.2002). Rule 5010 of the Federal Rules of Bankruptcy Procedure, which governs reopenings, provides:
*1226 A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code. In a chapter 7, 12, or 13 case a trustee shall not be appointed by the United States trustee unless the court determines that a trustee is necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case.
Fed. R. Bankr.P. 5010.
The Bankruptcy Court “has broad discretion to reopen to permit administration of assets.” 9 Collier on Bankruptcy, ¶ 5010.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); In re Faden, 96 F.3d 792, 796 (5th Cir.1996); In re Bianucci, 4 F.3d 526, 528 (7th Cir.1993); see also In re Upshur, 317 B.R. 446, 451 (Bankr.N.D.Ga.2004) ("Although a motion to reopen is addressed to the sound discretion of the bankruptcy court, the court in fact has a duty to reopen the estate whenever there is proof that it has not been fully administered. The proper focus is on the benefit to the creditors, so that if the action has any value, the case should be reopened.”).
If the Bankruptcy Court granted the debt- or's motion to reopen, the debtor could amend her schedules as a matter of right under Rule 1009 of the Federal Rules of Bankruptcy Procedure, "Amendments of Voluntary Petitions, Lists, Schedules and Statements.” Rule 1009, "General Right to Amend,” states, in pertinent part: "A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby.” Fed. R. Bankr.P. 1009(a).

.The City had standing to object to the debtor’s motion to reopen. In re Lewis, 273 B.R. 739, 749 (Bankr.N.D.Ga.2001).

. In re Barger, 279 B.R. at 909.

. Id.

. 11 U.S.C. § 350(b).

. In re Barger, 279 B.R. at 905, "Abandonment of property of the estate,” 11 U.S.C. § 554, states, in pertinent part:
(a) After notice and a hearing, the trustee may abandon any properly of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
(c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.
11 U.S.C. § 554. "[P]roperly scheduled assets that are not administered at the time the case is closed are deemed abandoned.” 3 Collier on Bankruptcy, ¶ 350.03 (emphasis added). While the Chapter 7 case was ongoing, the trustee was unaware of the claims against the City and, thus, could not have abandoned them.

. In re Barger, 279 at 904. The court added that "[wjhether that administration would also benefit [the debtor] remains to be seen.... Unless [the debtor] is entitled to exempt the claim, creditors will receive the benefit of any recovery, after payment of fees and expenses [of the litigation], under the distributive provisions of 11 U.S.C. § 726.” Id.

. Id. at 908.

. Id.

. If a debtor were to make a false statement in his schedule of assets, Rule 9011 of the Federal Rules of Bankruptcy Procedure provides authority for the Bankruptcy Court to sanction him. Fed. R. Bankr.P. 9011. Rule 9011(b) provides that ''[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person’s knowledge, information, and belief” that "the allegations and other factual contentions- have evidentiary support” and that “the denials of factual contentions are warranted on the evidence or, if so identified, are reasonably based on a lack of information or belief.” Fed. R. Bankr.P. 9011(b). If a party violates Rule 9011(b) by filing a schedule denying that he has any claims when he does, in fact, have claims such that that statement is a "denial ... [not] warranted on the evidence,” then "the court may ... impose an appropriate sanction” on the debtor. Fed. R. Bankr.P. 9011(c).

.Under 11 U.S.C. § 727, “Discharge,” the Bankruptcy Court may deny a debtor a discharge for concealing property of the estate or the trustee or a creditor may request the revocation of a discharge obtained through fraud. Section 727 states, in pertinent part: (a) The court shall grant the debtor a discharge, unless—
(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has ... concealed-
(A) properly of the debtor, within one year before the date of the filing of the petition; or
(B) property of the estate, after the date of the filing of the petition;
*1228 (c) (1) The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section.
(2) On request of a party in interest, the court may order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge.
(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of ■ this section if—
(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;
(e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge—
(1) under subsection (d)(1) of this section within one year after such discharge is granted; or
(2) under subsection (d)(2) or (d)(3) of this section before the later of—
(A) one year after the granting of such discharge; and
the date the case is closed.
11 U.S.C, § 727.

. In re Barger, 279 B.R. at 908 (citing In re Lewis, 273 B.R. 739, 748 (Bankr.N.D.Ga.2001)).

. The Bankruptcy Appellate Panel of the Ninth Circuit, in reversing the Bankruptcy Court's denial of a motion to reopen filed by a debtor, who, like Barger, had failed to schedule a lawsuit she had filed against her employer, stated that there are methods other than judicial estoppel for punishing a contumacious debtor;
[A]ny legitimate concerns about a former debtor's misconduct can be addressed by other methods, rather than refusing to reopen a bankruptcy case. In appropriate situations a debtor can be subject to prosecution and penalties. See, e.g., 18 U.S.C. §§ 152 and 3571. If a debtor shows bad faith, or if third parties are prejudiced by nondisclosure of an asset, then the bankruptcy court can exercise its discretion to disallow any claimed exemption in the asset, in whole or in part. In the circumstances of this appeal, where all creditors might get paid in full, Lopez still might receive a substantial portion of any recovery in the Action (11 U.S.C. § 726(a)(6)), but presumably that recovery would be because the Action had merit, not because Lopez gained any advantage by failing to list the Action.
In re Lopez, 283 B.R. 22, 30 (9th Cir. BAP 2002) (citation omitted).

. In re Barger, 279 B.R. at 908.

. Id. at 909.

. Id. (quoting In re Daniel, 205 B.R. at 349).

. Id.

. See Barger, 348 F.3d at 1292. Before it entered its final judgment in the case, the District Court was aware that the debtor's claims were assets of her bankruptcy estate and that the trustee could succeed to her position pursuant to Rule 25(c) of the Federal Rules of Civil Procedure. Id. The District Court did not order the substitution, but this court did on appeal: "Since the district court never directed the Trustee to substitute for Barger or join in her in this suit, the Trustee simply takes Barger's place from hereon.” Id. at 1293.

. In substituting its own findings and conclusions for the Bankruptcy Court's, the District Court was not exercising its role as an appellate court reviewing an interlocutory order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(3). See In re F.D.R. Hickory House, Inc., 60 F.3d 724, 725 (11th Cir.1995) ("[A] district court, at its discretion, may review interlocutory judgments and orders of a bankruptcy court_”). Rather, the District Court was ruling on the question of whether to grant the City summary judgment based on its affirmative judicial estoppel defense. See Barger, 348 F.3d at 1292.

. At this point, the trustee had intervened, as this court recognized that the debtor lacked standing. Id. Without elaboration, this court attributed to the trustee the debtor’s conduct in concealing her claims against the City and the pending District Court litigation even though "it seem[ed] clear that Barger [had] deceived the trustee,” id. at 1296:
[She] did not tell the trustee that she was ... seeking ... liquidated damages, compensatory damages, and punitive damages. She did not inform the trustee about these additional damages even though she added them to her prayer for relief [in the District Court litigation] a mere two days before the creditors meeting [conducted by the trustee].

Id.

. Id. at 1293-94 (citation omitted) (quoting Salomon, 260 F.3d at 1308).

. See supra note 70.

. Barger, 348 F.3d at 1294 (quoting Burnes, 291 F.3d at 1287).

. Id. at 1294-97.

. Id. The intent to manipulate the bankruptcy system occurred at the moment Barger was under a duty to disclose her pending claims but did not do so. See supra note 60.

. Id. at 1296 (citing Burnes, 291 F.3d at 1287).

. Under this court’s prior-panel-precedent rule, "a prior panel’s holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc." In re Lambrix, 776 F.3d 789, 794 (11th Cir.2015) (per curiam) (quoting United States v. Archer, 531 F.3d 1347, 1352 (11th Cir.2008)).

. Parker v. Wendy's Int’l, Inc., 365 F.3d 1268 (11th Cir.2004).

. I must confess that I sat on the panel that decided Parker, whose decision inadvertently violated this circuit’s prior-panel-precedent rule and reached a result opposite to the one compelled by Bumes and Barger, as well as the panel that decided Salomon, which actually turned on an unspecified state-law source of the doctrine but relied on the Eleventh Circuit’s formulation then in effect. Therefore, I bear part of the responsibility for allowing the current state of judicial estoppel to persist unresolved for as long as it has. Mea culpa, mea maxima culpa. "Under these circumstances, except for any personal humiliation involved in admitting that I do not always understand the opinions of this Court, I see no reason why I should be consciously wrong today because I was unconsciously wrong yesterday.” See Massachusetts v. United States, 333 U.S. 611, 639-40, 68 S.Ct. 747, 763, 92 L.Ed. 968 (1948) (Jackson, J., dissenting).

.Parker, 365 F.3d at 1272.

. Id. at 1271-73.

. Disagreement with the reasoning of prior precedent is not alone a basis for disregarding that precedent. See In re Lambrix, 776 F.3d at 794. The Parker Court did question whether the debtor in Bumes lacked standing but said nothing as to the propriety of the controlling Barger decision. See Parker, 365 F.3d at 1272.

. See, e.g., Stephenson v. Malloy, 700 F.3d 265, 271 (6th Cir.2012); Reed v. City of Arlington, 650 F.3d 571, 578 (5th Cir.2011) (en banc); Perry v. Blum, 629 F.3d 1, 9 (1st Cir.2010); George Klidonas & Regina L. Griffin,

. See Reed, 650 F.3d at 578-79.

. As then — Lord Chancellor John Scott, who later became' the first Earl of Eldon, admonished,
The doctrines of this Court ought to be as well settled, and made as uniform almost as those of the common law, laying down fixed principles, but taking care that they are to be applied according to the circumstances of each case.... Nothing would inflict on me greater pain, in quitting this place, than the recollection that I had done anything to justify the reproach that the equity of this court varies like the Chancellor’s foot.
Gee v. Pritchard, (1818) 2 Swans. 402, 414.

. 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 4477 (2d ed.2002). As far as I can tell, this is so with the exception of Riviera Beach and Tampa Bay Water. See supra note 28.

. The exceptions are again Riviera Beach and Tampa Bay Water. See also infra note 129.

. Chrysler Credit, 842 F.2d at 1261 (quoting Johnson Serv., 485 F.2d at 174). In that case, Rebhan was actually attempting to manipulate the system in the Bankruptcy Court by asserting under oath a position directly contrary to the position he had taken in a North Carolina court also under oath. See id.

. Id.

. McKinnon, 935 F.2d at 1192 (quoting Am. Nat'l Bank, 710 F.2d at 1536).

. See 28 U.S.C. § 1332.

. Salomon, 260 F.3d at 1308.

. See Burnes, 291 F.3d at 1285-86 (adopting the two-element statement).

. Chrysler Credit, 842 F.2d at 1261 ("Because this is a bankruptcy case, involving ... issues of dischargeability, we are ... free to apply a formulation of the judicial estoppel doctrine as we think proper.”).

. "We conclude that the two factors applied in the Eleventh Circuit are consistent with the Supreme Court’s instructions [in New Hampshire], and provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case.” Burnes, 291 F.3d at 1285-86.
I posit that this is what this court did first in City of Riviera Beach v. That Certain Unnamed Gray, Two-Story Vessel Approximately Fifty-Seven Feet in Length, 649 F.3d 1259 (11th Cir.2011), rev'd on other grounds sub nom. Lozman v. City of Riviera Beach, 568 U.S. -, 133 S.Ct. 735, 184 L.Ed.2d 604 (2013), and then in Tampa Bay Water v. HDR Eng’g, Inc., 731 F.3d 1171 (11th Cir.2013); it formulated a version of judicial estoppel appropriate for the circumstances at hand, although in neither case did it invoke doctrine. *1233 Riviera Beach was an in rem proceeding in admiralty. Riviera Beach, 649 F.3d at 1262. The appellant, Lozman, argued that Riviera Beach was judicially estopped from bringing a maritime claim against the defendant vessel because its position was allegedly inconsistent with its position (neither of which was under oath) in an earlier lawsuit between the same parties. Id. at 1265. In rejecting the estoppel argument, the court cited McKinnon, with the exception of the “divergent sworn positions” element of the divergent-sworn-positions-and-mockery-of-justice rule, id. at 1275, and Zedner v. United States, 547 U.S. 489, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006), which adhered to the elements of the doctrine New Hampshire invoked:
Judicial estoppel is "designed to prevent parties from making a mockery of justice by inconsistent pleadings.” McKinnon[, 935 F.2d at 1192], While judicial estoppel “cannot be reduced to a precise formula or test,” Zedner[, 547 U.S. at 504, 126 S.Ct. at 1976], three factors typically inform the inquiry: (1) whether there is a clear inconsistency between the earlier position and the later position; (2) a party’s success in convincing a court of the earlier position, so ■ that judicial acceptance of the inconsistent later position would create the perception that either the earlier or -later court was misled; and (3) whether the inconsistent later position would unfairly prejudice the opposing party if not estopped.
Riviera Beach, 649 F.3d at 1273. In Tampa Bay Water, Tampa Bay argued that HDR Engineering was estopped because of an inconsistent position it had taken in an earlier phase of the same case (not under oath). 731 F.3d at 1177. The court did not apply the doctrine because the positions were not inconsistent. Id. at 1182. Though it did not cite Riviera Beach for the version of the doctrine it considered, the court repeated Riviera Beach’s version verbatim. The Tampa Bay Water Court also cited this Circuit’s earlier recitation of the three New Hampshire elements (which Zedner reiterated) in Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1273 (11th Cir.2010), but not the Bumes formulation, which the Robinson Court actually applied in these words:
The seminal case in the Eleventh Circuit on the theory of judicial estoppel is Bumes .Incoiporating the standards enumerated by the Supreme Court, Bumes outlined two primary factors for establishing the bar of judicial estoppel. “First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.” Bumes recognized that these factors are not exhaustive; rather, courts must always give due consideration to the circumstances of the particular case.
See id. at 1273 (citation omitted) (quoting Burnes, 291 F.3d at 1285). Neither Riviera Beach nor Tampa Bay Water has been cited in any of our reported opinions in cases presenting the Burnes-Barger context and the situation here.

. Burnes, 291 F.3d at 1285 (quoting New Hampshire, 532 U.S. at 750, 121 S.Ct. at 1814-15)

. Like the Bumes opinion, the Barger opinion does not identify the position the debtor took under oath in the District Court.

. This is the scenario the instant case presents, except that, at the time the District Court granted U.S. Steel summary judgment, Slater was proceeding as the debtor in posses *1234 sion of her Chapter 13 bankruptcy estate and not as the trustee of the estate.

. The court would consider the evidence in the light most favorable to the trustee.

. See supra Part II.C.2.

. This is essentially what the Fifth Circuit observed in ¿ove v. Tyson Foods, Inc,: As one court has stated, “the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure.” Similarly, this court has found that debtors had a motivation to conceal where they stood to "reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors.”
677 F.3d 258, 262 (5th Cir.2012) (citations omitted).

. See Barger, 348 F.3d at 1295-96; supra notes 71-76 and accompanying text.

. See 28 U.S.C. § 1291.

. Id. § 158(a)(3).

. Id. § 158(d).

. Section 554, "Abandonment of property of the estate,” states, in pertinent part: (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
(c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title, not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
11 U.S.C. § 554. After the District Court issued an order dismissing the debtor's claim for lack of standing, the trustee would inform the District Court that he was opting not to intervene, in which event the court would enter a final judgment dismissing the case without prejudice. At this point, the claim would be sitting in the bankruptcy estate subject to administration by the trustee.

. The debtor could file the lawsuit because the District Court would have dismissed the earlier suit without prejudice for the debtor’s lack of standing.

. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir.2002).

. Barger v. City of Cartersville, 348 F.3d 1289 (11th Cir.2003).

. Burnes, 291 F.3d at 1286.

. Id. at 1285 (quoting New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001)).

. Id. (quoting Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302, 1308 (11th Cir.2001), cert, granted and vacated on other grounds, 537 U.S. 1085, 123 S.Ct. 718, 154 L.Ed.2d 629 (2002)).

. Id. (quoting Am. Nat’l Bank of Jacksonville v. Fed. Deposit Ins. Corp., 710 F.2d 1528, 1536 (11th Cir.1983)).

. Id.

. Id. (quoting Salomon, 260 F.3d at 1308).

. I do not include the habeas cases decided by the former Fifth Circuit that are discussed in note 42 supra.

. During the debtor’s prosecution of his claim in the District Court, his position in the Bankruptcy Court is essentially a statement that he is not prosecuting the claim in the District Court — that he possesses no such claim. That he is prosecuting the claim proves that such statement is false.

. The opposite conclusion was reached in Chrysler Credit Corp. v. Rebhan, 842 F.2d 1257 (11th Cir.1988), abrogated on other grounds by Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). There, the debtor made inconsistent statements under oath in a North Carolina court and subsequently in the Bankruptcy Court. Id. at 1261. In applying the doctrine, the Bankruptcy Court considered the first statement as true and the later statement as false. Id. at 1260.

. The doctrine of judicial estoppel appears to have been originally understood by this court as protecting a unitary “judicial system” against calculating litigants who would take different positions under oath in different courts, causing harm to the system as a whole. See, e.g., Johnson Serv. Co. v, Transamerica Ins. Co., 485 F.2d 164, 175 (5th Cir.1973) (describing judicial estoppel as protecting against "those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings” (emphasis added)). But this understanding has given way as the doctrine has been extended so that Article III courts may now invoke judicial estoppel to vindicate the interests of bankruptcy and state courts as well. See, e.g., Burnes, 291 F.3d at 1282 (applying judicial estoppel to a prior inconsistent position taken in bankruptcy court); Chrysler Credit, 842 F.2d at 1257 (same for a prior inconsistent position taken in state court). For purposes of this opinion, I refer to the Bankruptcy Court and the District Court, which serve discrete interests, as separate "judicial systems.”

. The same is of course true about the instant case and the Bumes and Barger progeny.

. The Fifth Circuit agreed in Reed v. City of Arlington, 650 F.3d 571 (5th Cir.2011) (en banc), a case on all fours with Barger in that the debtors’ lawsuit was filed prior to the filing of the debtors’ Chapter 7 petition and the debtors failed to schedule the judgment as an asset of the bankruptcy estate. Id. at 573; Barger, 348 F.3d at 1291. In refusing to invoke the doctrine of judicial estoppel against the bankruptcy trustee, who had intervened in the case after the nondisclosure of the judgment, the court stated: "This result upholds the purpose of judicial estoppel, which in this context is to protect the integrity of the bankruptcy process, by adhering to basic tenets of bankruptcy law and by preserving the assets of the bankruptcy estate for equitable distribution to the estate’s innocent creditors." Reed, 650 F.3d at 572-73 (emphasis added).

. Although bankruptcy courts are not Article III courts, it is not surprising, given their overlapping but distinct spheres of authority, *1237 that the district courts would be especially solicitous of the bankruptcy courts' interests. See Stern v. Marshall, 564 U.S. 462, 483-88, 131 S.Ct. 2594, 2609-11, 180 L.Ed.2d 475 (2011) (explaining the constitutional limits of bankruptcy courts’ decisionmaking authority); see also N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 60-76, 102 S.Ct. 2858, 2866-74, 73 L.Ed.2d 598 (1982) (plurality opinion).

. Burnes, 291 F.3d at 1286 (quotations marks and citations omitted).

. See Barger, 348 F.3d at 1292; Burnes, 291 F.3d at 1284.

. Barger, 348 F.3d at 1294-97; Burnes, 291 F.3d at 1286.

. See Barger, 348 F.3d at 1293-94; Burnes, 291 F.3d at 1286.

. Fed.R.Civ.P. 8(d)(3); see also United Techs. Corp. v. Mazer, 556 F.3d 1260, 1273 (11th Cir.2009) ("Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims.”); Allstate Ins. Co. v. James, 779 F,2d 1536, 1540-41 (11th Cir.1986) ("Litigants in federal court may pursue alternative theories of recovery, regardless of their consistency.”).
The substance of Rule 8(d)(3) has been in effect since the adoption of the Federal Rules of Civil Procedure in 1937, when the then-current version provided that "[a] party may ... state as many separate claims or defenses as he has regardless of consistency and *1238 whether based on legal or on equitable grounds or on both. All statements shall be made subject to the obligations set forth in Rule 11,” Fed.R.Civ.P. 8(e)(2) (1937).

. See Fed.R.Evid. 801(d)(2).

. Throughout this special concurrence, I am assuming that the claims that are es-topped are at least potentially meritorious, in that they have withstood, or are capable of withstanding, a motion to dismiss. See Fed. R.Civ.P. 12(b)(6). I am also assuming that the bankruptcy trustee (who has replaced the debtor, who lacks standing) is not subject to sanction under Rule 11 of the Federal Rules of Civil Procedure. After all, in order for the District Court to treat the debtor’s position in the Bankruptcy Court as false, it must assume that debtor's position in the District Court litigation, which the trustee has endorsed, is true.

. Barger, 348 F.3d at 1296; see supra note 104. The court said this in response to the Bankruptcy Court's statement that the debtor "truthfully and voluntarily disclosed the existence of the Litigation to the Trustee, the person responsible for pursuing it, whether or not it had been scheduled,” In re Barger, 279 B.R. 900, 908 (Bankr.N.D.Ga.2002):
The Court is not persuaded by the bankruptcy court's reasoning. The foremost responsibility in this matter was for Barger to fully disclose her assets. She did not satisfy her duty. Instead, she dissembled to the trustee and indicated that her discrimination claim had no monetary value. As such, the trustee can hardly be faulted for not further investigating Barger’s discrimination suit.
Barger, 348 F.3d at 1296.

. Id. at 1297 (quoting Burnes, 291 F.3d at 1288).

. In re Barger, 279 B.R. at 908 (emphasis added) (citing In re Lewis, 273 B.R. 739, 748 (Bankr.N.D.Ga.2001)).

. The debtors in Bumes and Barger would, in fact, be penalized if their claims were sufficiently valuable to pay off their creditors with additional funds left over. Future creditors might engage in a sort of cost-benefit analysis in deciding whether to conceal actionable claims for damages.

.Full disclosure is "crucial to the effective functioning of the federal bankruptcy system.” Burnes, 291 F.3d at 1286 (quotation *1240 marks omitted). ”[T]he importance of full and honest disclosure cannot be overstated.” Id. (quotation marks omitted). Consider another highly technical area of the law in which voluntary compliance is critical: the federal income-tax regime. It would be quite strange indeed if the Internal Revenue Code provided for the "punishment” of taxpayers who fail to report the proceeds of meritorious lawsuits by doing nothing more than return the taxable portion of any recovery to the defendants in those suits. Such a rule would impose no deterrent on future tax evaders, do nothing to encourage reporting, fail to raise any revenue for the Government, and inappropriately lump together inadvertent or negligent taxpayers with the consciously recalcitrant despite the general policy of tolerance toward nonintentional noncompliance. Cf. Ratzlaf v. United States, 510 U.S. 135, 144-47, 114 S.Ct. 655, 660-62, 126 L.Ed.2d 615 (1994); Cheek v. United States, 498 U.S. 192, 201-04, 111 S.Ct. 604, 610-12, 112 L.Ed.2d 617 (1991). That an analogous equitable doctrine would be considered necessary in the context of bankruptcy law is at least an equally dubious proposition,

.I omit reference to Burnes in this discussion because, in Bumes, the appellant was the debtor, not the bankruptcy trustee. Burnes, 291 F.3d at 1284. The court was not faced with the question of whether the trustee's, i.e., the creditors’ interests, should be taken into account determining whether, as a matter of equitable discretion, judicial estoppel should be invoked. In Barger, the trustee’s interests were at stake and dealt with. Barger, 348 F.3d at 1292-93.

. Fed. R. Bankr.P. 1001.

. See 11 U.S.C. § 521(a)(l)(B)(i), (iii); Fed. R. Bankr.P. 1007(b)(1)(A), (D).

. Burnes, 291 F.3d at 1284.

. See 28 U.S.C. § 2075.

. Fed. R. Bankr.P. 1009(a); see supra note 85.

. Burnes, 291 F.3d at 1285. The Supreme Court and Congress obviously had cases like Bumes in mind in providing without qualification that a debtor may amend his bankruptcy filings "as a matter of course at any time before the case is closed.” Fed. R. Bankr.P. 1009(a). The Burnes opinion does not mention Rule 1009 at all. Nonetheless, I assume that Bumes would not preclude a debtor from *1241 amending his filings to list a cognizable claim for damages before his nondisclosure has been discovered. It would appear, though, that if the party potentially liable on the claim discovers that the claim has not been scheduled and brings the matter to the bankruptcy trustee's attention, he thereby sets the stage for the application of judicial estoppel should the debtor amend his schedules and the trustee thereafter takes steps to recover on the claim.

. See 11 U.S.C. § 541. Section 541, “Property of the estate,” provides, in pertinent part, that the filing of a voluntary petition for bankruptcy relief "creates an estate ... comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a). "Even after the case is closed, the estate continues to retain its interest in unscheduled properly.” 5 Collier on Bankruptcy, ¶ 554.03 (Alan N. Resnick & Hemy J. Sommer eds., 16th ed.). Moreover, where the debtor fails to notify either the trustee or the creditors of a claim, the doctrine of abandonment does not apply. First Nat’l Bank of Jacksboro v. Lasater, 196 U.S. 115, 119, 25 S.Ct. 206, 208 49 L.Ed. 408 (1905). As the court put it in In re Upshur, 317 B.R. 446, 451-52 (Bankr.N.D.Ga.2004):
Property that is not correctly scheduled remains property of the estate forever, until administered or formally abandoned by the trustee. Thus, in the case of an omitted cause of action, the trustee is the real party in interest and the correct defense is one of standing, i.e., the action is not being prosecuted by the real party in interest which is the trusjpe, not the debtor. Cases like this must be reopened to permit the trustee to deal with the property of the estate.

. Fed. R. Bankr.P. 5010.

. See 11 U.S.C. § 350(b) (providing that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.”) The Supreme Court and Congress surely contemplated that if the debtor were attempting to manipulate the Bankruptcy Court, the court, at some point after reopening the case, would sanction the debtor, as the In re Barger Court suggested. In re Barger, 279 B.R. 900, 908 (Bankr.N.D.Ga.2002).

. See In re Barger, 279 B.R. at 901; 3 Collier on Bankruptcy, ¶ 350.03[1] ("[T]he discovery of unadministered assets ... continues to be a sufficient reason for the court to exercise its power [to reopen a case].... [I]t is clear that assets that are not properly disclosed on the schedules are not abandoned and remain property of the estate that can be administered if the case is reopened.”).

. In re Barger, 279 B.R. at 901.

. See id.

. See 11 U.S.C. § 362(a)(3) (providing that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of ... any act to obtain possession of property of the *1242 estate or of property from the estate or to exercise control over property of the estate.”). "One of the principal purposes of the automatic stay is to preserve the property of the debtor’s estate for the benefit of all the creditors.” In re Prudential Lines Inc., 928 F.2d 565, 573-74 (2d Cir.1991). The court in In re Barger was obviously aware of this purpose of the stay and that sustaining the City’s objection would remove property from the bankruptcy estate and injure the creditors. See In re Barger, 279 B.R. at 908-09.

. In re Barger, 279 B.R. at 908-09.

. See id. at 904.

. As the court in In re Upshur put it, "the court ... has a duty to reopen the estate whenever there is proof that it has not been fully administered. The proper focus is on the benefit to the creditors, so that if the action has any value, the case should be reopened.” 317 B.R. at 451.

. In re Barger, 279 B.R. at 909.

. Id.

. The Bankruptcy Court’s finding that Bar-ger, in failing to amend her schedules, had not “operatfed] with an intentional or manipulative disregard of the legal system or the bankruptcy processes in this Court,” id. at 908, implies the conclusion that sanctions under the Bankruptcy Code were not called for.

. See supra note 94.

. The "supervisory power” refers to this court’s inherent authority to oversee the procedures followed by the district courts and to "fashion[ ] procedures and remedies that ensure the judicial process remains a fair one.” Reynolds v. Roberts, 207 F.3d 1288, 1301 n. 25 (11th Cir.2000) (quoting Piambino v. Bailey, 757 F.2d 1112, 1145-46 (11th Cir.1985)). Relevant here, we have previously invoked the supervisory power to prevent "substantial prejudice” to innocent third parties whose interests were harmed by a debtor’s failure to disclose contested property during bankruptcy proceedings. See In re Furlong, 885 F.2d 815, 818-19 (11th Cir.1989); id. at 819 (Brown, J., concurring) (highlighting the "extreme importance” of protecting third parties and not allowing a debtor to "bargain away their rights” in bankruptcy proceedings).
*1243 I note in passing that In re Barger was referred to the Bankruptcy Court under the umbrella of 28 U.S.C, § 157(a). Section 157(d), gives the District Court the authority to "withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.” Id. § 157(d). In light of Reynolds, Piambino, and in particular, In re Furlong, one might posit that the relationship between this court and the district and bankruptcy courts could provide for the exercise of supervisory power with respect to a bankruptcy court’s practices.

. Barger's failure to amend her schedules to reflect the pending litigation was undisputed. The Bankruptcy Court found that the failure was excusable, and moreover, that the schedules didn’t need to be amended because the trustee knew about the lawsuit and the claims for damages. The District Court, in granting summaiy judgment, found that Bar-ger’s conduct was inexcusable because it was neither inadvertent nor a mistake.' Thus the District Court effectively substituted its view of the evidence for the Bankruptcy Court’s.

. I assume that the Bankruptcy Court complied with Rule'52(a) in anticipation of the possibility that the City might appeal to the District Court its decision to reopen. This court, in effect, reviewed the Bankruptcy Court's Rule 52(a) findings and conclusions, which were issued after the District Court issued its order granting summary judgment to the City, in reaching its decision. See Barger, 348 F.3d at 1292, 1294-97.

. I describe these secondary tools below. See- infra notes 210-212 and accompanying text,

. I would be remiss if I did not mention again an issue that was neither raised nor briefed in this appeal, which is whether the automatic stay, 11 U.S.C. § 362(c)(1), bars the District Court from granting the defendant summary judgment on a set of facts- like those in Barger. See supra note 84. Judicial estoppel is not a true affirmative defense. The facts supporting the defense are provided by the debtor’s post-petition behavior, not prepetition behavior relating to his claim and the defendant’s defense to that claim. It is as if the defendant were asking, the District Court to bar the trustee’s claim because the debtor robbed a bank. The defense operates like a permissive counterclaim, and in the language of § 362(c)(1), it constitutes “an act against property of the estate,"

. See 11 U.S.C. § 362(a)(3).

. The Bankruptcy Court’s order denying reopening could not be construed as the court’s abandonment of the claim because it is generally the trustee’s decision whether to abandon an asset of the bankruptcy estate. See 11 U.S.C. § 554, supra note 140.

. See In re Dunning Bros. Co., 410 B.R. 877, 879, 887-88 (E.D.Cal.2009) (citation and i quotation marks omitted) (“In the context of unscheduled property, the question of whether the case should be reopened requires only > a decision whether there may be unscheduled property that could be administered by a trus- . tee. It is not an appropriate occasion to consider or decide whether defenses could be established against the trustee. So, for exam■ple, the equitable defense of laches is not relevant to the decision whether to reopen a case, even though it may later be raised as a defense in the litigation that may follow.”).

. 11 U.S.C. § 362(c)(1) states, in pertinent part: "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate.” I suggest that, in a case like In re Barger, the stay would have the effect of tolling the statute of limitations on the claim in issue.

. See Barger, 348 F.3d at 1293 ("Judicial estoppel is an equitable doctrine that precludes a party from ‘asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.' The doctrine exists 'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.' " (citations omitted) (quoting Burnes, 291 F.3d at 1285)).

. At common law, using a process for which it was not designed is called "abuse of process.” "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process,” Restatement (Second) of Torts § 682 (Am. Law Inst. 1977). "The gravamen of the misconduct ... is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.” Id. § 682 cmt. a. For example, an abuse of the criminal process would occur if a merchant had a person arrested for writing a bad check but dropped the charge the moment the person made good on his debt. The purpose of judicial estoppel, the doctrine of inconsistent pleadings, is to preserve the integrity of the judicial system, not to punish someone for lying under oath. Using judicial estoppel to punish oath-breaking, in line with Bumes and Barger, is therefore analogous to abuse of process.

. Fed. R. Bankr.P. 1001.

. McKinnon v. Blue Cross & Blue Shield of Ala., 935 F.2d 1187 (11th Cir.1991).

. New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

. See id. at 750, 121 S.Ct. at 1814 (providing that “judicial estoppel prevents parties from playing fast and loose with the courts.” (quotation marks omitted) (quoting Scarano v. Cent. R.R. Co. of N.J., 203 F.2d 510, 513 (3d Cir.1953))); see also Burnes, 291 F.3d at 1285 ("The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest.” (alteration omitted) (quoting In re Coastal Plains, Inc., 179 F.3d 197, 205 (11th Cir. 1999))).

. The question is whether the claim was capable of being tried in the District Court.

. I refer generally to the bankruptcy courts because the Bumes-Barger doctrine applies in all cases, regardless of the particular presiding judge.

. The following, list includes many of the major traditional maxims of equity: (1) Equity does not suffer a wrong to go without a remedy. (2) Equity regards substance rather than form. (3) Equity regards as done that which ought to be done. (4) Equality is equity.© Where the equities are equal, the first in time will prevail. (6) Where the equities are equal, the law will prevail. (7) Equity follows the law. (8) One who comes into equity must come with clean hands. (9) One who seeks equity must do equity. (10) Equity aids the ■vigilant not those who sleep on their rights. *1248 (11) Delay defeats equity. (12) Equitable remedies are given as a matter of grace or discretion, not of right. (13) Equity acts in personam, not in rem.
1 Dan B. Dobbs, Law of Remedies § 2.3(4) n.7 (2d ed.1993).

. See Fed.R.Civ.P. 52(a)(1) (providing that, "In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court.”).

. Section 3057 provides, in relevant part,
Any judge, receiver, or trustee having reasonable grounds for believing that any viola *1249 tion under chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed. Where one of such officers has made such report, the others need not do so.
11 U.S.C. § 3057(a) (emphasis added).

.Nor did the Bankruptcy Court see any basis for finding that the debtor had violated Rule 9011 of the Federal Rules of Bankruptcy Procedure, which mimics Rule 11 of the Federal Rules of Civil Procedure. Compare Fed. R. .Bankr.P. 9011 with Fed.R.Civ.P. 11. The District Court and this court did not mention Rule 9011, so I assume that they saw no reason to invoke it.

. A debtor who files false bankruptcy schedules pursuant to 11 U.S.C. §§ 521(a)(l)(B)(i) and (iii) and Rule 1007 of the Federal Rules of Bankruptcy Procedure under penalty of perjury, see 28 U.S.C. § 1746, may have committed perjury in violation of 18 U.S.C. § 1621.

. See 18 U.S.C. § 401; Fed.R.Crim.P. 42.

This column indicates whether the case presented a Burnes scenario, in which the party that is asserting judicial estoppel was not a party in the prior proceeding, or a New Hampshire scenario, in which the party that is asserting judicial estoppel was a party in the prior proceeding. As indicated in Part II.B. of the Special Concurrence, "prior proceeding” does not necessarily mean the lawsuit first filed. It has instead come to mean “another proceeding” where the violation of the oath occurs.

 This column indicates whether the case cites the language requiring one statement under oath or the language requiring two statements under oath for the doctrine of judicial estop-pel to apply. In some instances, the case cites both the language requiring one oath and two oaths, which is indicated by "Either.”